# THE STATE v. W. F. ALLEN, Appellant.

### Division Two, February 15, 1916.

1. **ARRAIGNMENT: Appeal.** The failure of the record to show either an arraignment or a plea will not, of itself, entitle defendant to a reversal, the record also failing to show that any objection was made at any time to a lack of arraignment or plea until the case reached the appellate court.

2. **INFORMATION: Amendment of Statute After Crime: Substantial Rights of Defendant.** It is error for the information to charge that the age of the prosecutrix was under fifteen years and that of defendant above seventeen years, in the language of the amendment of the statute which raised the age of consent from fourteen to fifteen years and that of defendant from sixteen to seventeen years, where the act of carnal knowledge was committed before the amendment went into effect; but under the Statute of Jeofails the error is not reversible, unless it tends to the prejudice of the substantial rights of the defendant on the merits; and it does not so prejudice those rights, where the evidence clearly establishes that the prosecutrix was at the time of the alleged crime above fifteen years of age and the defendant above seventeen.

3. **CHANGE OF VENUE: Trial With Application Pending.** Where the record fails to show anything on the subject except the bare fact that an application for a change of venue was filed, it will not be held on appeal that the case was tried while a formal and sufficient application was pending.

4. **———: ———: Matter of Exception.** Complaint that the case was tried while an application for a change of venue was pending is a matter of exception, to be saved for review in the bill of exceptions.

5. **———: Jurisdiction of Another Judge: Agreement upon Special Judge.** Where the record shows that an application for a change of venue was filed and that a judge of another circuit was called by the regular judge to sit in the case and "was on the bench" and tried the case without objection, it will be presumed, in the absence of a record showing to the contrary, that both the State and defendant waived the privilege of selecting a special judge; and, aided by the presumption of right action on the part of a court of general jurisdiction, it will be *held* that the judge so called in had authority to try the case.

267 Mo. 4

6  EVIDENCE: Impeachment: Carnal Knowledge: Offer to Set-
tle For Money.   Evidence in a prosecution for carnal knowl-
edge of a female under the age of consent that the prosecutrix
proposed to defendant or his attorney, to leave the State and
not appear at the trial if money were paid to her, and that
her uncle after a conference with her and her mother and in
pursuance to an understanding with them hunted up defend-
ant and proposed to him, and later proposed to defendant's at-
torney, that if money were paid to him he would take prose-
cutrix out of the State and see to it that she did not appear
at the trial, is competent for the purpose of impeaching both
the prosecutrix and her mother as witnesses to the main fact
of sexual intercourse, and the exclusion of such testimony is
reversible error.

Appeal from Stoddard Circuit Court.—*Hon. E. M.
Dearing,* Judge.

REVERSED AND REMANDED.

*Mozley & Woody* and *J. W. Farris* for appellant.

(1)   The record in this case discloses that, on the
first day of the March term, 1914, of the circuit court
of Stoddard county, the same being the return term
of the information, defendant filed his application for
a change of venue under R. S. 1909, sec. 5198. That
application has never been disposed of, but is still
pending.   The application being in due form, it be-
came mandatory upon the court to grant the change,
and make such disposition of the case as required by
statute.   R. S. 1909, secs. 5198, 5199; State v. Spivey,
191 Mo. 87; State v. Shipman, 93 Mo. 147.   (2)   The
cause was not set down for trial by Hon. W. S. C.
Walker, the judge of said court, and there is nothing
to show that Judge Dearing was called in by Judge
Walker.   R. S. 1909, sec. 5201; State v. Gillham, 174
Mo. 671. (3)   Defendant was charged with violating
section 2, page 219, Laws 1913.   The offense, if com-
mitted at all, was committed during either the month
of March or the month of April, 1913.   Said section 2

did not become a law until June 23, 1913, hence defendant could not have violated said law in March or April, 1913. Constitution, art. 4, sec. 36; State v. McMahon, 234 Mo. 611; State v. Schenk, 238 Mo. 429; State v. Howard, 175 S. W. 58; Neef v. McGuire, 52 Mo. 493; Ex parte Smith, 135 Mo. 223; State v. Finley, 187 Mo. App. 72. (4) Under all the facts and circumstances detailed in evidence in this case, the character of the parties, the time and place where this offense is, according to the testimony of the prosecuting witness, alleged to have been committed, the conduct of the parties after the alleged commission, the time which elapsed, between the alleged commission and the date when prosecuting witness told her mother, the means used by her mother to compel her to make the charge, all go to show that the story of the prosecuting witness is an unreasonable one. The testimony is not sufficient to prove the guilt of defendant beyond a reasonable doubt, and his instruction in the nature of a demurrer to the evidence should have been given. State v. Jaeger, 66 Mo. 173; State v. Primm, 98 Mo. 368; State v. Burgdorf, 53 Mo. 65; Harper v. Railroad, 186 Mo. App. 296. (5) Defendant was not arraigned, therefore, his motion in arrest of judgment should have been sustained. R. S. 1909, sec. 5165; 12 Cyc. 344; 2 Ency. Pl. & Pr. 787; State v. Williams, 117 Mo. 379; Shelp v. U. S., 81 Fed. 694; Crain v. U. S., 162 U. S. 625; State v. Cisco, 186 Mo. 49; Secs. 22 and 30, art. 2, Constitution.

*John T. Barker,* Attorney-General, and *Lee B. Ewing,* Assistant Attorney-General, for the State.

(1) The information is good. State v. Salts, 263 Mo. 308; Kelly's Crim. Law & Practice, sec. 535; State v. Clark, 158 Mo. App. 489; State v. Nave, 185 Mo. 125; Sec. 4472, R. S. 1909. (2) Appellant was not ar-

raigned, but he was present at the trial and made no
objection or exception thereto. He offered evidence in
his defense and also testified himself. By going to
trial without objection, he waived arraignment. State
v. O'Kelley, 258 Mo. 345; State v. Gould, 261 Mo. 694.
(3) Appellant filed application for change of venue.
The transcript does not disclose the grounds for the
application, nor whether or not the trial court ruled
thereon. Neither does it show that appellant made
any objection or exception to the ruling of the court,
or his failure to rule thereon. It does disclose that
Judge Walker, the regular judge of the circuit, called
in Judge E. M. Dearing of the Twenty-first Circuit
and appellant went to trial without objection before
the latter judge. Nor did appellant present the ques-
tion to the trial court for review, either in his motion
for a new trial or in arrest of judgment. This record
does not convict the trial court of error in this regard.
Drainage District v. Richardson, 227 Mo. 252; Leslie
v. Chase, 200 Mo. 263; Wolff v. Ward, 104 Mo. 127.
(4) There was no reversible error in the trial court's
rulings upon admission and rejection of testimony.

FARIS, P. J.—Defendant, convicted in the circuit
court of Stoddard County for a violation of the pro-
visions of section 4472, Revised Statutes 1909, for that
he had carnal knowledge of a female under the age of
consent, after the usual motions for a new trial and
in arrest of judgment, has appealed.

The information upon which this prosecution is
bottomed was filed on the 5th day of February, 1914.
It charges the defendant with committing the alleged
offense in March, 1913. Except in the behalf dis-
cussed in the opinion, the information is conventional
and we need not cumber the record with the whole of

it, but we mention in passing that as to the ages of the persons involved it follows the amendment of 1913, *which amendment went into effect subsequent* to the date of the commission of the alleged offense.

The facts in brief, so far as they are pertinent and so far as we do not set them out in our opinion, run thus:

Defendant is a physician and surgeon now practicing in the city of St. Louis, but at the time of the alleged commission of the offense charged, engaged, a portion of his time at least, in practicing his profession in Stoddard County, Missouri, and having offices at one time or another both in Dexter and in Bloomfield in that county. Defendant while practicing in Stoddard County seems to have specialized in the treatment of diseases of the eye and was thus brought professionally into contact with the prosecuting witness, one Hattie Allard, aged at the time set out in the information, sixteen years, lacking a few days. Having been treated by defendant for an affection of the eyes while he was in Dexter, she followed him to Bloomfield for the purpose, as the record shows, of having the treatment continued. She remained in Bloomfield for some five weeks taking such treatment, and while thus under the care of defendant the first sexual act of defendant with her took place in the latter part of March or the first days of April, 1913. From that time on, until November, 1913, as occasion offered, other acts of sexual intercourse occurred between defendant and the prosecuting witness, the last act occurring in the room of defendant at a hotel in Dexter on Thanksgiving Day, 1913. While the prosecuting witness and defendant were in this room, the mother of the former, suspecting the relations existing, slipped into an adjoining room and overheard suspicious noises which she deemed to indicate that defendant and her daugh-

ter were engaged in illicit intercourse. Going into this room the moment defendant unlocked the door, she found, she tells us, prosecutrix sitting in defendant's lap. Soon thereafter this prosecution was commenced. Other elements necessary to be proven are sufficiently shown by the record. The State showed a telephone conversation between defendant and the prosecutrix, and likewise a conversation between defendant and a Mrs. Kimbell, which to an extent corroborates the testimony of the prosecutrix.

On cross-examination of the prosecutrix and likewise of her mother, who testified for the State, it was shown that for some five days after the mother had, as she says, caught her daughter and defendant in the compromising position mentioned, prosecutrix had continued to deny any illicit relations with defendant, and that it was not until the mother had slapped prosecutrix's face repeatedly and otherwise physically maltreated her, that she confessed these relations.

The defense was not guilty in the broadest sense of the word, in this, that defendant denied ever having been intimate with prosecutrix and averred that the sole relation existing was that of physician and patient. The age of defendant is not definitely shown, but it is shown that he attended medical school four years prior to the year 1897 and that he graduated as, a physician and surgeon in that year. His general reputation for morality and chastity is shown by the record to be good and in no wise is this denied or controverted by the State.

Such further facts as may be required to make clear the points discussed will be found set out in our opinion, at which place they may appositely serve to make clear our discussion of the questions mooted.

I.  Defendant by his learned counsel contends that inasmuch as the record fails to disclose either an **Arraignment.** arraignment or a plea, he is for this entitled to a reversal out of hand. The record also shows that no objection was lodged anywhere touching the lack of an arraignment and plea till the case got here, and that defendant was tried in all respects just as if a formal arraignment and plea had been had—as they doubtless were, if we were permitted, *as we are not,* to speculate upon facts on which the record is silent.

Defendant's learned counsel concede that the cases of State v. O'Kelley, 258 Mo. 345, and State v. Gould, 261 Mo. 694, are against this contention, but they cite and quote at some length from Crain v. United States, 162 U. S. 625, and largely upon the authority of the latter case, insist that we were wrong in the O'Kelley and Gould cases, and urge us to over-rule the latter cases and get back to the good old technical rule of other days. We are not disposed to overrule the holding made in the O'Kelley case for the reason so ably urged upon us by counsel, or for any other reason; especially since about the time the O'Kelley case was ruled, the Supreme Court of the United States in an opinion in which all concurred, overruled the case of Crain v. United States, supra, cited to us and relied on by counsel. [Garland v. State of Washington, 232 U. S. 642; see, also, State v. Garland, 65 Wash. 666.]  Hence, we disallow this contention.

II.  There is no doubt that an error occurs in the information, in that, while it was filed subsequent to **Amendment of Statute After Crime.** the taking effect of the amendment of 1913, Laws 1913, p. 219, it charged an offense committed in March, 1913, prior to the taking effect of said amendment.  When

the alleged offense occurred, the statute forbade carnal knowledge between males of sixteen years and upwards and unmarried females of previous chaste character between the ages of fourteen years and eighteen years. Pending the alleged commission of the crime and the filing of the information at bar, the amendment was passed and took effect, raising the age of the male from sixteen to seventeen years and that of the female from fourteen years as a minimum to fifteen years, to conform to the age of consent statute defining statutory rape amended by the same bill. In the information herein these ages are set out as *seventeen* years and *fifteen* years respectively, instead of *sixteen* and *fourteen,* as the law and the time of the facts required. The error conceded, the inquiry arises, is it reversible error? Clearly not, unless this error tends "to the prejudice of the substantial rights of the defendant upon the merits." [Sec. 5115, R. S. 1909.] The above provision of our Statute of Jeofails is obviously in point here. Since it is impossible to see wherein defendant was prejudiced by this error, the point should be disallowed. For we judicially notice from the facts in proof that defendant was over seventeen years of age in March, 1913; because he says he was in medical school four years and that he graduated therefrom in 1897, and that he is married and had a son sixteen years of age at the time of trial. At the time of the carnal intercourse alleged the female was, as the proof likewise shows, a few days less than sixteen years of age. So since defendant was over seventeen years and prosecutrix was under eighteen years of age, an erroneous averment as to the statutory minimum which serves to differentiate statutory rape from carnal knowledge does not, in our view, prejudice defendant in any wise.

III.  Complaint is made that the case was tried while a sufficient and formal application for a change of venue was pending.  This complaint is

**Change of Venue.** not borne out by the record; for the record fails to show aught except the bare fact that an application for a change of venue was filed. Neither the application itself, nor any record of any action thereon, appears in the record, nor is any exception to the action of the court, nor any exception to the failure of the court to act thereon, shown by the bill of exceptions.  For aught that appears, except by fairly plain inference, defendant waived action thereon after filing the application for a change of venue.  The inference referred to is that he got the identical change of venue he asked for; because the case was tried by Judge Dearing of the Twenty-First Circuit, and not by the regular judge of the Stoddard Circuit Court, whom we judically know to be Judge W. S. C. Walker.  But be this as may be, matters of this sort are matters of pure exception to be saved for review in the bill of exceptions, and since the point is not so saved, we cannot review it.  [Drainage District v. Richardson, 227 Mo. 252.]

Cognate to this complaint, is the contention likewise urged that Judge Dearing had no authority to

**Calling in Another Judge.** try this case because the record is bare of averments making for jurisdiction in him. The contention touching the record is true, save and except the meagre entries (a) that an application for a change of venue was filed, and (b) that Hon. E. M. Dearing, ''who was called by the Hon. W. S. C. Walker, regular judge of this court, and requested to sit in the following cases: State of Mo. v. W. F. Allen . . . was on the bench.''  While these entries are meagre in averment and the last one does not appear till after one mis-trial (errors in which we are not here called on to review), we are of opinion

that, aided by the presumptions we are permitted to entertain, of the right and proper action of a court of general jurisdiction, they are sufficient to show that Judge Dearing was for a sufficient reason called in by the regular judge to sit in this case. While the record here does not show any effort of defendant and the prosecuting attorney to elect, or rather agree on, a special judge before Judge Dearing was called in (Sec. 5199, R. S. 1909), yet in the absence of a record showing the contrary it will be presumed that both the defendant and the State waived the privilege of selecting a special judge. [State v. Wear, 145 Mo. 162; State v. Gillham, 174 Mo. 671; State v. Hunter, 171 Mo. l. c. 439.] Since, as forecast, a circuit court is a court of general jurisdiction, every presumption will be entertained touching the rightness and orderliness of its proceedings, naught else appearing, and since the record shows that the regular judge did call in Judge Dearing to try this case and that he tried it without objection from any source, it was not fatal to Judge Dearing's jurisdiction that the record failed to show affirmatively the reasons moving Judge Walker in such behalf. [State v. Hunter, 171 Mo. l. c. 440; State v. Gilmore, 110 Mo. 1; State v. Gamble, 108 Mo. 500; State ex rel. v. Wear, 129 Mo. l. c. 625.] As seen, however, the inference is obvious that Judge Dearing was called in because Judge Walker had been theretofore "sworn off the bench," as the local vernacular would designate it, by the application for a change of venue. The conclusion follows that this contention should be disallowed.

IV. In the course of the cross-examination of the prosecuting witness she stated in answer to a question **Compounding Felony: Impeachment** by counsel for defendant, that her uncle, one Franklin Fowler, had talked with her and her mother about going to St. Louis. Thereupon defendant's counsel asked her this ques-

tion: "What was the discussion between your uncle, your mother and yourself about his going to St. Louis to see Dr. Allen?" An objection by the State was interposed and sustained to this question for that it had no· tendency to prove any issue in the case and defendant excepted. Whereupon the jury and the prosecuting witness were both removed and defendant made his formal offer of proof thus:

"The purpose of this offer is to show that, as the witness has testified, her uncle came down there to Dexter and had a conference with her mother and her, respecting this case, with a view of her uncle going to St. Louis and getting a thousand dollars to settle the case. I expect to show that in pursuance to that conference, he did go to St. Louis and hunted up Doctor Allen, that he demanded a thousand dollars from him, and Doctor Allen told him that he would have to see Mr. Mozley, his attorney at Bloomfield, and that he couldn't discuss the matter with him. I expect to show that he came directly from St. Louis to my office and made the same demand on me; that he stated to me that if we would pay a thousand dollars, he would see that Miss Allard was not here for the trial; that if we would pay him a thousand dollars, he would take Miss Allard and go to Illinois and not appear at the trial of this case. I expect to show that I declined to do it and ordered him out of my office."

Upon this offer the court again ruled that since "the State could not be bound by such conduct on the part of the uncle or anybody else," and the offering "had no tendency to prove or disprove any of the allegations charged in the information," objection by the State to the offering would be sustained, and defendant again saved his exception. In this refusal to allow the defendant to investigate the alleged connection of prosecutrix and her mother, who was also a very damaging witness in the case, with the alleged acts of the uncle, we think the learned court *nisi* erred. This

offer of proof could, indeed, neither bind nor estop the State, nor did it tend to prove or disprove any of the component elements of the offense charged, but it would have served to impeach both the prosecuting witness and her mother, from whom alone came practically all of the evidence of defendant's guilt. There was an entire lack of physical corroborating facts. Prosecutrix was never examined by a physician or by any one else, neither did she become pregnant from the alleged intercourse. In short, the proof of her deflowering rests upon the oral averments of her mother and herself, diminished as to herself in probative weight by the fact that she first confessed defendant's behavior with her under stress of a face-slapping and hair-pulling from her maternal parent.

The sole defense was that defendant had never had sexual intercourse with her. Upon this alleged truth and his good character he relied for acquittal; so, an inquiry into the motives if any, of those who appeared against him was peculiarly important in his defense. If prosecutrix's uncle went to St. Louis and offered to compound this felony of his own accord and without the consent and concurrence of witnesses who appeared against the defendant, then it follows of course that his acts—unless to impeach him should he become a witness in the case—are inadmissible for any purpose. But if he went to see defendant to make this offer with the consent and concurrence of prosecutrix and her mother, he became their agent on the ground, to mention no other, that all became co-conspirators and they are to be impeached by what he said or offered to do while endeavoring to carry through the common enterprise, just as though they had made the offer themselves. If the rule were otherwise compounders of felony and blackmailers need only to employ an intermediary in order to go unwhipt of justice. There are old cases which seem to hold that even the prosecutrix would not be im-

peached for that she offered to compromise the case. Doubting the logic of such a view, but distinguishing these cases if they are right, from a case wherein an offer is made by one representing the chief witnesses in the case, that if the sum of one thousand dollars be paid by the defendant the prosecutrix will leave the State and not appear at the trial, we are impelled to say that if such proof would not be meet for impeachment, it is difficult to imagine conduct which would be admissible for that purpose. In analogous cases in this State, and squarely in point elsewhere, it has been so held. [Barkly v. Copeland, 86 Cal. 483; Alward v. Oakes, 63 Minn. 190; Bessette v. State, 101 Ind. 85; Jenkins v. State, 34 Tex. Cr. App. 201; Richards v. State, 34 Tex. Cr. App. 277; Comm. v. Bell, 4 Pa. Superior Ct. 187; Pleasant v. State, 13 Ark. l. c. 377; State v. McKinstry, 100 Iowa, 82.] Upon the facts here this case is to be clearly distinguished from that of State v. Caudle, 174 Mo. l. c. 393.

The point is made that the evidence is not sufficient to take the case to the jury. This point is not well taken. There was substantial evidence of guilt, and since the weight and credibility of the evidence is for the jury and not for us, we are not disposed, nor have we the legal right to interfere. For the error noted let the case be reversed and remanded for a new trial. It is so ordered. All concur.