THE STATE v. ELLIOT DESHON, Appellant.—68 S. W. (2d) 805.

Division Two, February 23, 1934.

*Jno. E. Heffley, Hobson Hoar* and *Wm. Linn* for appellant.

*Roy McKittrick*, Attorney-General, and *Olliver W. Nolen*, Assistant Attorney-General, for respondent.

TIPTON, J.—On the 29th day of April, 1932, the Prosecuting Attorney of Buchanan County, Missouri, filed in the circuit court of that county an information charging the appellant with the crime of robbery by the use of a deadly and dangerous weapon.

Honorable L. A. Vories, Judge of Division Two, of that court, presided at the trial of this cause, and on the 3rd day of June, 1932, the jury found the defendant guilty, but were unable to agree as to the punishment, whereupon the court assessed the appellant's punishment at life imprisonment in the penitentiary. He has duly appealed to this court.

We believe the facts are fairly stated in the respondent's brief and we will adopt its statement of facts which are as follows:

"The evidence tended to show that on the 2nd day of February, 1932, Edna Robison, the prosecuting witness, lived near Industrial City, just north of the city limits of St. Joseph, Missouri, and was employed by the C. D. Smith Drug Company of St. Joseph. She was twenty-one years of age and unmarried. On the date in question she left her work at the usual time, and after partaking of the evening meal, went to a local hospital to visit a girl friend. On her way home, about 8:00 P. M., she was met by one Holly Fulton, who was driving an

automobile. He offered to take her to her home and she got in the car. In proceeding to her home they took a rather circuitous route and when within about two and one-half blocks from her home, the car was halted by two men, one, identified as the defendant, coming to the side of the car in which Miss Robison was sitting, and the other, identified as George Stanton, going to the other side. At the point of a gun Holly Fulton was compelled to get out of the car and a small amount of change was taken from him. Fulton was then ordered back in the car, defendant got in the back seat, directed Fulton to drive to Carnegie School, about eight miles east of St. Joseph, on U. S. Highway No. 36. A car followed them on this journey.

When they arrived at the schoolhouse, Fulton was directed to drive on past the same a short distance and turn around, the other car having turned into the school yard. He was then ordered to turn around and go into the school yard also. On arriving at the schoolhouse there was considerable conversation between the parties. Stanton finally ordered Miss Robison to alight from the car and they proceeded several steps to the rear of the car. Miss Robison was then compelled to go inside the schoolhouse with Stanton, the defendant remaining in the car with Fulton. Stanton struck Miss Robison several times and attempted to compel her to submit to acts of degeneracy. She succeeded in repelling his attempts and he called for the defendant to come into the schoolhouse. Stanton then left the building and it appears from the evidence, locked Fulton in the toilet a short distance from the schoolhouse. Defendant then took a small diamond ring from Miss Robison of the value of thirty-seven dollars and fifty cents ($37.50) and solicited her to engage in sexual intercourse with him, telling her that he would give the ring back if she would yield. He then attempted to have intercourse with her by force, in which Miss Robison testified he was not successful.''

The appellant's defense was an alibi. Other pertinent facts will be stated in the course of this opinion.

I. The appellant's first assignment of error is that the trial court did not have jurisdiction to try this case. The Circuit Court of Buchanan County is composed of three divisions. [Laws 1915, p. 257.]. This case was originally pending in Division Three of that court. While pending in that division, the appellant filed an application for a change of venue, undertaking to disqualify the judge of Division Three, J. V. Gaddy; the judge of Division Two, L. A. Vories; and the judge of Division One, Sam Wilcox; on the grounds that each of the judges were biased and prejudiced. Judge Gaddy sustained the application as to himself, but overruled the application as to Judge Vories and Judge Wilcox, and transferred the case to the division presided over by Judge Vories. The appellant then filed a plea to the jurisdiction of Division Two of the circuit court because

he had previously taken a change of venue, wherein he had attempted to disqualify all the judges of the Circuit Court of Buchanan County. This plea to the jurisdiction was overruled.

It is the appellant's contention that under Section 3648, Revised Statutes of Missouri, 1929, he had a right to disqualify all the judges of that circuit. The pertinent parts of this section are as follows:

"When any indictment or criminal prosecution shall be pending in any circuit court or criminal court, the judge of said court shall be deemed incompetent to hear and try said cause in either of the following cases: . . . When the defendant shall make and file an affidavit, supported by the affidavit of at least two reputable persons, not of kin to or counsel for the defendant, that the judge of the court in which said cause is pending will not afford him a fair trial."

It is true that this section does not expressly limit the disqualification to only one judge; there is no section of the statute in criminal procedure which limits the applicant to only one change of venue from one trial judge, but we have consistently ruled that the applicant is entitled to only one change of venue.

In the case of State v. Greenwade, 72 Mo. 298, l. c. 304, in speaking of the right of the defendant to take more than one change of venue from the trial judge, we said:

"There is nothing in the statute on the subject, but we cannot suppose that the Legislature designed to allow a perpetual round of such motions and affidavits by which a trial could be indefinitely postponed, and, therefore, the application before Judge Wright, under Section 1877 was the end of such applications."

In the case of State v. Anderson, 9 S. W. 636, 96 Mo. 246, l. c. 247, we said:

"Here Judge Bland followed the case to the Laclede Circuit Court, as he was obliged to do by the express command of Section 1881, as amended by the Act of 1887 (Acts 1887, p. 168). This section, as amended, makes no provision for another change of venue because of prejudice or alleged prejudice of the judge. This matter is one of statutory regulation, and the ease with which such affidavits of prejudice are procured, on an adverse ruling of the court, renders it important to keep within the statute. There should be an end to such applications; and we hold now, as in the case last cited, that the application for a change of venue, because of prejudice of Judge Wallace, was the last of such motions."

In State v. Callaway, 55 S. W. 444, 154 Mo. 91, l. c. 96, we said:

"Relative to the change of venue applied for before Division No. 8 on the alleged ground of the prejudice of the judge, a change of venue having been applied for, for the same reason before Judge Klein, and granted, a second change was not allowable."

In State v. Messino, 325 Mo. 743, l. c. 761, 30 S. W. (2d) 750, we said:

"Defendant could not thus disqualify *all of the judges of the circuit*. [State v. Wagner (Mo.), 279 S. W. 23, and cases cited.] The Wagner case involved similar facts." (Italics ours.)

In State v. Wagner, 317 Mo. 391, 279 S. W. 23, l. c. 26, 27, we said:

"Counsel for defendant say that the application for a change of venue conformed to Section 3991, Revised Statutes 1919, which provides."

This section is the same as Section 3648, Revised Statutes 1919, and the opinion then quotes this section. The court further said:

"The application for change of venue filed before Judge Southern sought to disqualify Judge Porterfield, a judge before whom the case was not then pending, and the application filed before Judge Porterfield, was a second application for a change of venue for the alleged bias and prejudice of the trial judge. A defendant is allowed only one change of venue under this section of the statute. . . . While the statute does not explicitly provide that the defendant in a criminal case shall not have more than one change of venue for the alleged bias and prejudice of the trial judge, we have so construed the statute."

We, therefore hold that the appellant was entitled to only one change of venue from the trial judge and he had no right to attempt to disqualify Judge Vories or Judge Wilcox for the same reason that he disqualified Judge Gaddy. ■ The appellant contends that Judge Gaddy had no right to send the case to Judge Vories, that under the Section 3649, some qualified member of the bar should be elected as special judge. This section provides:

"Whenever, in any criminal cause, the defendant shall make application under oath, and supported by the affidavit of two or more reputable persons, not of kin or counsel for the defendant, to the truth of the allegations in such application for a change of venue, for any of the reasons stated in the next preceding section, it shall be lawful for the judge to hear and determine such application; or whenever it shall be within the knowledge of the court or judge that any of the causes enumerated which disqualify him in any case exist, *the defendant and prosecuting attorney may by agreement in writing, with the concurrence and approval of the court, elect some attorney at law, who possesses all the qualifications of a judge of the circuit court, as special judge in said cause.*" (Italics ours.)

Before an attorney can be elected under this section it it necessary that the defendant and the prosecuting attorney agree in writing and have the approval of the court. The record in the case at bar fails to show that the appellant and the prosecuting attorney agreed in writing to elect an attorney at law to act as special judge. In fact, the record fails to show any effort of the appellant and the prosecuting attorney to elect, or rather agree on a special judge before the case was transferred to the division presided over by Judge

Vories. In the absence of a record showing the contrary it will be presumed that the appellant and the State waived the privilege of electing a special judge.

In the case of State v. Allen, 183 S. W. 329, 267 Mo. 49, l. c. 58, we said:

"While the record here does not show any effort of defendant and the prosecuting attorney to elect, or rather agree on, a special judge before Judge Dearing was called in (Section 5199, R. S. 1909), yet in the absence of a record showing the contrary it will be presumed that both the defendant and the State waived the privilege of selecting a judge. [State v. Wear, 145 Mo. 162; State v. Gillham, 174 Mo. 671; State v. Hunter, 171 Mo. l. c. 439.]"

We believe that as the record fails to show that the appellant and the prosecuting attorney failed to agree upon an attorney at law to act as a special judge, that under Section 3651, Revised Statutes 1929, Judge GADDY had authority to transfer the case to Judge Vories. The pertinent parts of this section are as follows:

"If, in any case, the judge shall be incompetent to sit, for any of the causes mentioned in Section 3648, and no person to try the case will serve when elected as such special judge, the judge of the said court shall in either case set the case down for trial on some day of the term, or on some day as early as practicable in vacation, and notify and request another circuit or criminal judge to try the case; and it shall be the duty of the judge so requested to appear and hold the court at the time appointed for the trial of said case; and he shall, during the trial of the said case, possess all the powers and perform all the duties of the judge at a regular term of said court. . . ."

In the case of State v. Gillham, 74 S. W. 859, 174 Mo. 671, l. c. 674, we said:

"It will be observed that this section, while it uses the term *election of a special judge,* yet the terms of the section do not constitute an election. It merely confers upon the defendant and prosecuting attorney, with the approval of the judge, the right to agree upon some one to try the case. This was a right that they could exercise or fail to exercise. The statute is not mandatory; they could not be compelled to avail themselves of this privilege. In the case of State v. Wear, 145 Mo. 162, BURGESS, J., discussing Section 4177, Revised Statutes of 1889, very similar to this section now under discussion, said:

" 'The defendant and prosecuting attorney could avail themselves of it or not, just as they saw proper, and as the record does not show to the contrary, the presumption will be indulged that it was their own fault that they did not do so, and that they in fact waived the privilege.'

"With these views, we are clearly of the opinion that Judge Clark had the authority to invite Judge Neville to try said cause."

We believe there was substantial compliance with the above section, and therefore rule that Judge Vories had jurisdiction to try this case and this assignment of error is overruled.

■ II. The appellant's next assignment of error is that the trial court admitted illegal testimony. The appellant produced witnesses who testified that his reputation for peace and quietude was good. The respondent in rebuttal, introduced testimony that the appellant's reputation for peace, quietude and morality was bad. The appellant contends the testimony should be "restricted to the traits of character involved and which may effect the offense charged." It is his contention that the State's testimony to the effect that his reputation for morality should not have been admitted. We do not believe that the appellant is in any position to complain in regard to this evidence. His motion for a new trial does not state this objection in detail and with particularity as required by Section 3735, Revised Statutes 1929. However, we do not believe there is any merit in his contention, even if the objection were properly preserved. The appellant was a witness in his own behalf. Since the case of State v. Clinton, 67 Mo. 380, we have uniformly ruled that where a defendant becomes a witness he could be discredited by inquiring into his moral character the same as any other witness. [State v. Baird, 288 Mo. 62, 231 S. W. 625; State v. Scott, 58 S. W. (2d) 275, 332 Mo. 255.]

■ The appellant further contends that the State's character witnesses were not qualified. He states the test to be "that he is well acquainted in the neighborhood where the defendant lives or in the community where he resides or with people whom defendant generally associates and what those people generally say about defendant." We believe the State's witnesses met these qualifications.

The following question asked the witness, Mrs. Trent, is a typical question asked of all the State's character witnesses.

"Q. Mrs. Trent, a man's reputation is made up by what the people in the community where he lives and who know him generally say about him. Basing your answer on that I will ask you to state if you know the reputation of Elliot DeShon as to his reputation for peace, quietude, morality and for truthfulness and veracity?"

In each instance the witness answered in the affirmative. We believe this is sufficient to qualify the witness.

Each witness testified that he knew the appellant at least five years. The mere fact that the witness did not live in the immediate vicinity where the appellant resided, did not disqualify the witness; but rather went to the weight of his testimony which was for the jury.

In 8 Ruling Case Law, page 212:

"A witness is qualified to testify to the reputation of a defendant, where he has been in such a position with reference to the defendant's residence or circle of acquaintances that the fact of his hearing

nothing against him would have a tendency to show that nothing had been said against him, and, therefore, that his reputation was good. *It is not indispensable that a witness to the reputation of the accused should have resided in the same community with the accused."* (Italics ours.)

We, therefore overrule this contention.

■ III. The appellant's next assignment of error is that the trial court should not have given Instruction No. 7. This instruction was on conspiracy. No complaint is made as to the form of this instruction, but appellant claims it destroys the effect of Instruction No. 5, which was an instruction on appellant's defense of an alibi. The evidence showed that the appelllant and Stanton stopped the car in which the prosecuting witness was riding and that the appellant by the use of a revolver compelled her and her escort to drive to the school house, where the robbery was committed. Stanton followed them in another car. He then compelled the prosecuting witness to go into the schoolhouse with him, while the appellant locked her escort in an outbuilding. Later the appellant went into the school house and he and Stanton robbed the prosecuting witness of her diamond ring. The evidence clearly showed that the two men were acting together throughout the robbery. For that reason it was not an error to instruct upon conspiracy. [State v. Sturrs, 51 S. W. (2d) 45.]

Instructions must be read together and if they present the law of the case when thus considered that is all that is necessary. [State v. Nasello, 30 S. W. (2d) 132, 325 Mo. 442; State v. Messino, 30 S. W. (2d) 750, 325 Mo. 743; State v. Citius, 331 Mo. 605, 56 S. W. (2d) 72; and State v. Thornton, 58 S. W. (2d) 314.]

Taking the instructions as a whole, we do not believe the jury could have been misled. They would not have found the appellant guilty, if they had believed the evidence produced on his behalf in regard to his defense of an alibi.

This assignment of error is overruled.

■ IV. In his brief, the appellant's last assignment of error is that the "trial court abused its discretion in fixing his punishment at life imprisonment, without consulting the jury and especially so when request was made by the defendant." (Appellant.)

The jury returned the following verdict:

"We, the jury in the above entitled cause, find the defendant guilty of robbery in the first degree as charged in the information. We, the jury are unable to agree on the punishment."

Section 3704, Revised Statutes 1929, reads:

"Where the jury agree upon a verdict of guilty but fail to agree upon the punishment to be inflicted . . . the court shall assess and declare the punishment and render judgment accordingly."

Under the authority of this section, the court assessed the appellant's punishment at life imprisonment in the penitentiary.

The information charged the appellant with robbery in the first degree with a dangerous and deadly weapon under Sections 4058 and 4061, Revised Statutes 1929.

The punishment prescribed for first degree robbery under Section 4061, supra, is death or imprisonment for not less than ten years; if the robbery is accomplished by other means the punishment shall be imprisonment in the penitentiary for not less than five years. In either instance the person convicted may receive punishment in the penitentiary for life.

The judgment assessed by the trial judge in this case is that prescribed by Section 4061, supra; and he was within his rights in fixing the punishment at life imprisonment. The trial judge had a right to fix the appellant's punishment at his discretion, and he was under no duty to ascertain the views of different members of the jury. The punishment assessed was within the limits prescribed by the statutes, and the court did not abuse its discretion in assessing the appellant's punishment.

V. The above assignment of errors are all that appear in the appellant's brief, there are other errors assigned in his motion for a new trial. We have examined them and found them without merit.

The information and verdict are in proper form. The judgment of the trial court is, therefore, affirmed. All concur.