THE STATE v. ALLEN V. FERRIS, Appellant.—16 S. W. (2d) 96.

Division Two, March 2, 1929.

2

*Foulke & Foulke* for appellant.

4

*Stratton Shartel,* Attorney-General, and *L. Cunningham,* Assistant Attorney-General, for respondent.

WALKER, J.—The defendant was charged by information under Section 3348, Revised Statutes 1919, in the Circuit Court of Jasper County, with having sold mortgaged personal property without the written consent of the mortgagee and without informing the purchaser that the property was mortgaged. Upon a trial to a jury he was convicted and his punishment assessed at two years' imprisonment in the penitentiary. From this judgment he appeals.

The defendant was the president and manager of the Southwest Overland Knight Co., hereinafter referred to as "the corporation." He owned ninety-nine shares of the capital stock of this company; his wife owned twenty shares, and one Belcher owned one share. The company was engaged in the business of selling automobiles. The defendant claimed to personally own an Overland sedan automobile. On January 26, 1926, he gave the corporation his note for $845.46, payable in monthly installments, and to secure the payment of same executed a chattel mortgage to the corporation on the car. On the 30th day of January, 1926, he sold and assigned the note and the chattel mortgage to the O'Neil Security Co. This company was a partnership, composed of Hugh and Newland O'Neil, and they paid the corporation $749.46 for said note and mortgage. Earl Haley, a salesman of the corporation, began negotiations with one Elmer Covert to exchange the mortgaged car for a Jewett car owned by Covert and $500. Haley informed the defendant of the proposed sale and was directed by the latter to make it. He did so. At the time of the sale the defendant was absent in Kansas City. Covert had no knowledge of the note given by the defendant to the O'Neil Security Company, nor of the chattel mortgage on the Overland car given to secure its payment, and was given no information in regard to the same by either Haley or the defendant. Nor did the members of the O'Neil Security Company give their consent, written or otherwise, to the sale. In May, 1926, the corporation became financially involved to the extent that the defendant called a meeting of the creditors and turned the stock books and property of the corporation over to certain trustees. Apprised of this fact the O'Neil Security Company, in taking steps to collect the note due to it by the corporation, discovered that the car, mortgaged to the O'Neil Company to secure the note given to it by the corporation, had been sold and delivered to Covert. After the books and property of the corporation had been turned over to the creditors, the defendant went to El

Paso, Texas, where he was subsequently arrested, and brought back for trial, not requiring extradition to be issued to compel his return.

The evidence for the defendant was to the effect that one J. L. Hine was operating a business at Springfield, Missouri, known as the Overland Knight Company, and in the fall of 1925 was the owner of a large number of used automobiles which he sent to Joplin, Missouri, in charge of the defendant; that defendant was in his employ and under his direction and made remittances to him of all money received and that he was paid a salary by Hine. That defendant was instructed by Hine to organize a corporation with the capital stock of $12,000, with himself as president, his wife as secretary and Belcher as treasurer, which stock was to be conveyed to Hine. That the car mortgaged by the defendant to the corporation of which he was president, was sold to Covert in the usual course of business of the corporation and that the corporation received the proceeds; that the defendant executed the note and chattel mortgage to the corporation and conveyed and assigned them as president to the O'Neil Security Company upon selling the same to it; that defendant knew and approved of the sale of the car to Covert; that he gave no instructions to Haley to inform Covert that the car was mortgaged and did not inform Covert of that fact himself; that he had no written consent from the O'Neil Security Company or Hugh O'Neil or Newland O'Neil to sell the car, but that they knew the course of business and dealing and gave their consent that the automobile be sold; that when the defendant found that the company was in close straits financially, he called a meeting of the creditors, at which Hine was present, and an agreement was made to turn over all of the property to the trustees for the benefit of creditors; that such property was delivered to the trustees; that Hine was at all times the actual owner of the corporation, and in April, 1926, sold the same and notified defendant by letter that he had done so. After the business was turned over to the trustees, the defendant worked for them for about two weeks; that he then went to El Paso, Texas, to seek employment; that he told one of the trustees before he left where he was going and he was informed by them that they did not need him; that he had a position at El Paso, Texas, and was working there; that he did not know any warrants were out for his arrest and that he had not run away.

The State's evidence in rebuttal was to the effect that Hine did not own the corporation; that he had furnished the used cars to the defendant with an agreement to sell them to him for forty-five hundred dollars, and that he had received the amount of forty-five hundred dollars for them from one Byron Crutcher, and that he (Hine) had nothing to do with the corporation. That Hugh O'Neil and Newland O'Neil had not given any written consent or verbal consent for the sale of the mortgaged car, and had no agreement by which it was understood that the defendant could sell the same.

I. It is contended that the information is invalid in that it does not allege that the mortgage was in force and effect, does not state who was the owner of the same at the time of the alleged sale or that it had ever been assigned, nor does it allege whose consent was necessary to constitute the offense charged.

The charging part of the information is as follows:

"Allen V. Ferris being mortgagor in a certain chattel mortgage made and executed on the 29th day of January, 1926, whereby the said Allen V. Ferris, sold, conveyed and mortgaged to Southwest Overland Knight Company, a corporation, certain personal property, to-wit: One (1) Standard Overland Sedan Mtr. No. 21934, to secure the payment of $845.46 by the said Allen V. Ferris to the said Southwest Overland Knight Company and with intent to cheat and defraud Hugh O'Neil and Newland O'Neil co-partners doing business under the firm name of O'Neil Security Company, assignees of the said Southwest Overland Knight Company and Elmer Covert, he the said Allen V. Ferris, did unlawfully and feloniously sell, convey and mortgage and dispose of said property mentioned in said mortgage to one Elmer Covert without the written consent of the said Southwest Overland Knight Company and said Hugh O'Neil and Newland O'Neil the mortgagee and the beneficiary and assignee in the said mortgage and without informing the said Elmer Covert that said property was mortgaged as aforesaid; and against the peace and dignity of the State."

That part of the statute applicable to this case is as follows:

"Every mortgagor or grantor in any chattel mortgage or trust deed of personal property who shall sell, convey or dispose of the property mentioned in said mortgage or trust deed, or any part thereof, without the written consent of the mortgagee or beneficiary, and without informing the person to whom the same is sold or conveyed that the property is mortgaged or conveyed by such deed of trust . . . shall, if the property be of the value of fifty dollars or more, be deemed guilty of a felony, and upon conviction thereof, shall be punished by imprisonment in the penitentiary not exceeding five years, or by imprisonment in the county jail not exceeding six months, or by a fine of not less than one hundred dollars, or by both such fine and imprisonment. . . ." [Sec. 3348, R. S. 1919.]

This is a statutory offense. Comparing the information with the statute it will be seen that the former follows the phraseology of the latter in charging the crime. This is sufficient to constitute a valid charge where, as here, the statute describes the entire offense by setting out the facts constituting it. [State v. Anderson, 298 Mo. l. c. 391, 250 S. W. 68 and cases cited.] This having been done it was not necessary, in informing the defendant of the nature of the charge against him, that the averments insisted upon by him be made a part of the information. Aside from this reason, ample of itself to sustain the sufficiency of the information, it may be said that it is a necessary

8

implication from the averments made in the information, not only that the mortgage was in full force and effect when the sale was made to Covert, but that the owner of the mortgage was, at the time, the O'Neil Security Co. The allegation as to ownership sufficiently appearing, the fact that the same was acquired by purchase and assignment was not required to be stated. The rule of the common law was that charges of crime should be certain to every intent without any intendment to the contrary. This is no longer the rule in this jurisdiction, especially in regard to statutory offenses. Allegations of certainty to a common intent or reasonable certainty are, in such cases, all that are required. By this is meant such particularity in the allegations that the identity of the offense may be determined from the face of the charge, that the accused may be enabled to know what he has to meet that he may prepare his defense and authorize a conviction or an acquittal to be pleaded in bar to another prosecution for the same offense. The information at bar meets the requirements of the rules stated and the contentions of the defendant in regard thereto are overruled. [State v. Prince, 317 Mo. 840, 297 S. W. 34.]

It is further contended that a failure to allege the value of the mortgaged property sold and disposed of by the defendant renders the information invalid. The value of the car, so far as concerns this prosecution, was sufficiently stated in alleging that the amount of the note, the payment of which was secured by a mortgage on the car, was $845.46. A more specific allegation was not required. That classified the offense as a felony which constitutes the sole purpose of a statement of value and meets the requirements of the statute. [Sec. 3908, R. S. 1919.]

Before the jury was selected to try the cause the prosecuting attorney was permitted to amend the information by striking out the word "contriving" in the same, and inserting in lieu thereof the words "with intent." The amendment was timely made and was authorized under the Statute of Jeofails. [Secs. 3762 and 3853, R. S. 1919.] The fact that the change of venue had been taken in the case does not lessen the right of the prosecuting attorney to make the amendment. We held in State v. Dixon, 253 S. W. (Mo.) l. c. 747, that: "The right to amend an information seems to be as broad as the right to amend pleadings in civil cases. A change of venue is awarded to a defendant as a privilege when it appears he cannot have a fair and impartial trial in the county where the crime is charged to have been committed. It would be anomalous to contend that, by taking a change of venue, the defendant could deprive the State of the right of amendment, and thus defeat a prosecution because of a defect in an information that is unqualifiedly amendable under the statute."

II.   A failure of the record to show a formal arraignment of the defendant does not invalidate the prosecution.   The statute (Sec. 3958, R. S. 1919) provides that "in all cases where he does not confess the charge to be true, a plea of not guilty shall be entered, and the same proceedings shall be had, in all respects, as if he had formally pleaded not guilty."   The defendant answered ready for trial and a trial was had in all respects as though he had been arraigned and had pleaded not guilty.   [Sec. 3958, Laws 1925, p. 196.]   He has, therefore, no ground of complaint. [State v. Allen, 267 Mo. 49, 183 S. W. 329; State v. Loesch, 180 S. W. (Mo.) 875.]

III.   Allegations in the information not necessary to be proved may be rejected as surplusage.   [Sec. 3908, Laws 1925, p. 195.]   The defendant suffered no injury therefrom and has no ground of complaint on that account.   [State v. Prince, 297 S. W. (Mo.) 34; State v. McConnell, 240 Mo. 269, 144 S. W. 836.]

IV.   It is contended that the evidence was insufficient to sustain the verdict.   A summary of the same will suffice to determine the merits of this contention.   The proof shows that the defendant consented to the sale and disposal of the mortgaged car.   It was shown that the car was valued at $950 and that a Jewett automobile valued at $450 and five hundred dollars in cash were paid for it by Elmer Covert.

The chattel mortgage and note were sold and assigned by the defendant as president of the Southwest Overland Knight Company to the O'Neil Security Company for $749.46.   The charge was that defendant did "sell, convey, mortgage and dispose of" the mortgaged property to Elmer Covert.   It is not material to any issue in the case whether defendant conveyed or transferred a valid title to it as required for the conveyance of motor cars under the motor vehicle law.   The defendant unlawfully disposed of the mortgaged property.   The evidence does not sustain the defendant's claim that the State did not prove that he had title to the mortgaged car.   He unlawfully disposed of it whether he had or conveyed valid title.

The statute concerning the conveyance of motor vehicles and transferring title thereto was enacted to prevent fraud and the sale of stolen cars and was not enacted to protect mortgagors from punishment for selling, conveying and disposing of mortgaged property without the written consent of the mortgagee and without informing the person to whom it was sold that the property was mortgaged because perchance the title was not transferred as required by law.

V. The validity of the chattel mortgage is demonstrated by an inspection of the same as it appears in the record. Conforming as it does to the other requirements of our law it was not in violation of the statute limiting the rate of interest (Sec. 6492, R. S. 1919), which prescribes that parties may, in writing, contract for not more than eight per cent, which was the amount fixed in the chattel mortgage.

VI. The guilt of the defendant is not dependent upon the business relation Haley sustained to the corporation. If it be conceded that he was its agent he was nevertheless acting for the defendant and with his consent and approval in selling and disposing of the mortgaged car. The contention of the defendant, therefore, that the evidence did not sustain the conviction is without merit.

VII. The exclusion of testimony in regard to transactions of the Southwest Overland Knight Company was not error; they had no connection with the defendant's offense and for which he was on trial, and were wholly irrelevant.

VIII. Instruction 2, given by the court, correctly hypothesized the entire case. It is not subject to tenable objection. Instruction 4, given by the court, told the jury in effect that if they believed from the evidence that the defendant authorized and directed Haley to sell the mortgaged car, the act of Haley in making the sale was the act of the defendant. This instruction correctly declares the law authorized to be given under the evidence.

Defendant's contention as to error alleged to have been committed in the refusal of instructions is not preserved in the motion for a new trial in such a manner as is required by law and is not subject to our review. [Sec. 4079, Laws 1925, p. 198; State v. Standifer, 289 S. W. (Mo.) 856.]

IX. Defendant assigns error in that one of the jurors had prejudged the case. The integrity of this assignment is sought to be established by the affidavits of two women who state that while sitting in the court room, as spectators, they heard a man near them, who was afterwards selected on the trial panel, remark that he thought the defendant guilty and he was in favor of giving him ninety-nine years.

No attempt is made in these affidavits to identify or personally designate the juror, other than to state that during the trial he sat on the back row of the jury seats and was smooth shaven. This is a grave charge and the courts, in considering the same, have looked askance at it unless timely made and sufficiently specific in its terms

to bear the impress of truth on its face or to enable its verity to be established. This assignment of error is made for the first time in the motion for a new trial. The motion nowhere states when the assigned error came to the knowledge of counsel for the defendant. If known to them or the same was discoverable by the exercise of ordinary diligence it should have been brought to the attention of the trial court before the verdict, or the reason for not so doing should have been stated in the motion. [State v. Bobbst, 269 Mo. 214, 190 S. W. 257.] This not having been done the objection comes too late when made for the first time in the motion for a new trial. [State v. Mathews, 202 Mo. 143 and cases 149, 100 S. W. 420.]

Further than this the vagueness of these affidavits lessened, if it did not destroy, their credibility. The charge made therein was not leveled at any particular juror, which would have enabled the trial court to test its truth. On the contrary, by the indefinite terms employed in charging prejudice the affidavits cannot be otherwise construed than as an attempt to cast suspicion upon the integrity of the trial panel. Such procedure, under all of the facts disclosed by the record, constitutes no ground for a new trial and the court did not err in so ruling.

No prejudicial error having been committed the judgment is affirmed. All concur.