Raymond Paul PATRICK, Appellant,

v.

STATE of Missouri, Respondent.

No. 55383.

Supreme Court of Missouri, Division No. 2.

Nov. 9, 1970.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 14, 1970.

694

G. B. Veatch, Monroe City, C. M. Black-well, Paris, for appellant; Patrick Horner, Auxvasse, of counsel.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

In June 1944 appellant entered pleas of guilty to two separate charges of first de-

gree murder and was sentenced to life imprisonment in each case. He has appealed from an order of the circuit court of Monroe County, made after an evidentiary hearing, overruling his motion to set aside the judgments of conviction and permit him to withdraw his pleas.

Appellant alleged in his motion that (1) "he was denied court determination as to whether he was competent to enter the pleas, or even competent enough to understand the nature of the crimes charged * * * when existing evidence of a prior history of insanity was known, or should have been known, to both the prosecuting authorities and defense counsel," (2) the prosecutor suppressed evidence of appellant's past medical history which was known, or should have been known, to him, (3) he was denied effective assistance of counsel, (4) his pleas of guilty were coerced and induced, (5) he was not represented by counsel "at the arraignment before the preliminary hearing, wherein the complaint · was read to him and he entered a plea of guilty to the complaint as made," and (6) the informations were defective in that they failed to charge an "intent to kill."

At the time appellant entered his pleas of guilty he was represented by Mr. William M. Stringer, an experienced and competent attorney from Moberly, Missouri, who appellant testified was employed by his father but not wanted by him because "he was picked by Russell Wilkes," the sheriff. However, we note that in his motion appellant alleged that Mr. Stringer was of his own choosing. At the time of the hearing on the motion, Mr. Stringer was judge of the probate and magistrate courts of Randolph County.

Appellant testified that with his counsel present he was arraigned in a "little room" near the circuit court room. He was there told that he was charged with murder. His counsel told him that he would talk to the judge and try to "get me a life sentence due to the fact of my medical history," and he was told by his counsel and the prosecutor that he would be sent to Jefferson City and "get treatment," and that they "would get me out in five years." Appellant testified that he did not again see his attorney and did not again confer with him until two weeks later when he entered his pleas of guilty, and that he then saw his attorney for about thirty minutes. At that time, according to appellant, his attorney told him, "you're going to get a double life sentence, just take it easy," and that when he appeared before Judge Roy Meriwether, now deceased, the charges were not read to him, the range of punishment was not explained to him, he did not know that he could have had a jury trial or what witnesses the State would call or what the State's evidence would be. Appellant stated that Judge Meriwether merely said, "Mr. Patrick, do you want to plead guilty to this charge?" and he answered that he did. He admitted that when he entered his pleas of guilty he knew he would receive life sentences. The judge did not make any promises, and did not tell him that he would get out in five years.

In support of his contention that he was not mentally competent at the time of his pleas, appellant testified that in 1944 he was nervous and had transitory amnesia. He also stated that in 1942 or 1943 he was "supposed" to have stolen an automobile, and when the Highway Patrol was after him he "flipped" the automobile over and sustained back and head injuries. He did not know the diagnosis of his condition following that accident. He went into the army in January 1943, was there hospitalized twice, and in July was given a medical discharge. After his discharge he received treatment from a doctor in Hannibal, and he has received treatment while in prison. He did not say of what the treatment consisted or what it was for.

Appellant testified that he entered his pleas of guilty on the advice of his attorney, and that he agreed with that advice. He also testified that the reason he pled guilty was because of the promise that he would get out in five years. He admitted

that he committed the offenses with which he was charged.

Appellant places considerable reliance on a letter dated July 20, 1944, which was forty-four days after he entered his pleas of guilty, from the office of the Army Adjutant General. To whom the letter was sent is not shown, but it was not appellant. The pertinent portion of that letter is as follows: "The records show that Raymond P. Patrick * * * was inducted 16 March 1943, transferred to the Enlisted Reserve Corps the same date, and reported for active duty 23 March 1943. He became unfit for duty 14 July 1943 and was honorably discharged 4 August 1943 on certificate of disability for discharge by reason of psychoneurosis, mixed type, severe, manifested by preoccupation over somatic complaints without physical findings, hysteroid manifestation, (somnambulism, transitory amnesic periods), poor mental concentration and vasomotor instability. Character at discharge was recorded as very good."

The prosecuting attorney, Mr. Thomas V. Proctor, who at the time of the hearing on the motion was judge of the probate and magistrate courts of Shelby County, testified that at the time of appellant's arrest he noticed that he had "a certain amount of nervousness." When asked about it, appellant said that he had been drunk for six or seven days. After appellant sobered up he noticed nothing to indicate that appellant was not mentally competent. Judge Proctor testified that pursuant to a policy of having an examination made of every person charged with a serious felony, appellant was examined by Dr. George Ragsdale, the county physician, and by Dr. T. R. Turner, the county coroner. These doctors told the prosecuting attorney that appellant "certainly knew what he was doing, and knew what was right from wrong." Appellant made no claim at the time that he was insane. Based on his observation it was the opinion of Judge Proctor that appellant was sane at the time he entered the pleas of guilty. Appellant's father told Judge Proctor that he had been discharged from the army because he was incorrigible, but the father made no contention that he was incompetent.

Judge Stringer testified that after he was employed as attorney for appellant he investigated the facts, "everything that was open to me," and both the prosecuting attorney and the sheriff told him what was revealed by their investigations. He knew of appellant's military service, but he had no reason to and did not question his mental condition. He also knew of the report by the two doctors. He did not discuss with appellant the possibility of an insanity plea because he did not see any reason for it. Neither appellant nor his father ever contended he was not competent. He talked to appellant about the circumstances of the crimes and appellant cooperated fully. He also told him that he had a right to a jury trial and discussed with him the range of punishment. He recommended to appellant that he plead guilty and appellant agreed. He did not advise appellant that he could be acquitted because "the evidence was such that it would have been foolish to have done that, misleading."

The evidence offered by the State at the hearing on the motion consisted of the testimony of the sheriff and of Dr. J. F. Tuttle, a psychiatrist and assistant director of the State Hospital at Fulton, Missouri.

Dr. Tuttle testified that a person having the conditions set forth in appellant's army records showing the diagnosis at the time of discharge (which was substantially that set forth in the letter previously quoted) would not be suffering under a psychosis; that such a person would have the capacity to know the difference between right and wrong and would be able to understand the nature and quality of his acts; that he would be oriented as to time, place and events; he would be capable of conferring with his attorney; and would understand the nature of criminal charges against him and could assist in his defense and cooperate with his attorney.

The sheriff, Mr. Russell Wilkes, testified that after appellant was arrested and until he was taken to the penitentiary he observed him every day, that in his opinion appellant was sane, and that appellant made no statement and did nothing to cause him to believe he had a mental problem.

Following the hearing on the motion the trial court made a detailed statement of the evidence, findings of fact and conclusions of law, and overruled each contention of appellant set out in his motion.

Appellant first contends on this appeal that Judge Meriwether erred in accepting his pleas of guilty without first determining whether the pleas were "entered voluntarily and with understanding of the nature of the charge and the consequences of his plea."

The pleas of guilty in this case were entered before the adoption of Criminal Rule 25.04, V.A.M.R. However, the language of the rule is a codification of the case law in this state. State v. Reese, Mo., 457 S.W. 2d 713. It appears from the wording of appellant's point in his brief that it is his contention that the acceptance by the trial judge of the pleas of guilty without a determination at that time of voluntariness and understanding on the part of appellant is of itself grounds to now set aside the pleas.

Apparently there was no transcript made of the proceedings at the time appellant entered his pleas of guilty, a not-uncommon practice in 1944. However, the fact, if it was a fact, that the investigation made by the trial court prior to accepting the pleas of guilty was not as broad and inclusive as now required by Rule 25.04, V.A.M.R., or as contemplated by the then case law, does not necessarily require that the pleas of guilty now be set aside. When the contention is presented in a post-trial motion, "The issues before the trial court * * * notwithstanding the failure of the record to show a determination prior to the acceptance of the plea * * * are whether [appellant's] plea of guilty was in fact involuntarily made or whether it was made without an understanding of the nature of the charge.

If neither of these circumstances is found to have existed no manifest injustice could have resulted from the acceptance of the plea." State v. Mountjoy, Mo., 420 S.W.2d 316, 323.

As previously pointed out, after the hearing on the motion, the trial court made detailed findings of fact and conclusions of law. It did not expressly find that the appellant entered his pleas of guilty voluntarily with understanding of the nature of the charges. The obvious reason for not doing so was that the trial court carefully set forth and ruled on each contention of appellant asserted in his motion, and that issue was not included in any alleged contention. The precise contention alleged was that he "was denied court determination as to whether he was *competent* to enter the pleas, or even *competent* enough to understand the nature of the crimes charged." After reviewing the evidence the trial court ruled the specific issue presented by its finding that "there was no showing that [appellant] was incompetent."

Rule 27.26(c) provides that a motion to vacate shall include every ground known for vacating, setting aside or correcting the conviction or sentence. Paragraph (i) of said rule provides that the trial court shall make findings of fact and conclusions of law "on all issues presented," and by reason of Paragraph (j) the review on appeal "shall be limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous." The fact alone, if such were the fact, that the trial court did not make a determination at the time that the pleas of guilty were voluntary and made with understanding does not entitle the appellant to have the judgment and sentence set aside. While appellant presented evidence to the effect that the judge who accepted his pleas did not comply fully with what would now be required by reason of Rule 25.04, the State's evidence did not go to that issue but pertained to the precise issue presented in the motion. Under the circumstances of this case, the issue of whether at the time

of the pleas the court complied with the substance of Rule 25.04, except as to the question of mental competency, was not before the court at the hearing on the motion, and is not now before this court on appeal. The findings and conclusions of the trial court on the precise issue presented are not clearly erroneous.

■ Appellant's second contention that the prosecutor suppressed evidence of his past medical history, is without merit. He argues that "it is inconceivable to believe the prosecuting authorities did not reasonably investigate appellant's medical discharge," and that "the information" could have been found in appellant's "F.B.I. sheet," which would have demanded further investigation. This argument, in effect, is that the prosecution must search for evidence to support an affirmative defense even though the prosecutor has no actual knowledge of the matter. However, there is no duty on the State to prepare a defendant's case. The trial court found that the prosecuting attorney was unaware of any past medical history which called for disclosure by him, and we agree. In addition, the fact of the medical discharge was known by appellant so there could have been no suppression of that fact from him. The findings and conclusions of the trial court as to this contention are not clearly erroneous.

■ The third contention of appellant is that he was "denied effective assistance of counsel." Appellant's counsel was experienced and competent. This contention is not developed in the brief except, as alleged in the fifth contention in his motion, appellant asserts that he was not represented by counsel "at the arraignment before the preliminary hearing." Of course, arraignment in the circuit court follows the preliminary hearing in the magistrate court (in 1944, the justice of peace court). In this case appellant's counsel testified that the preliminary hearing was waived, and although there is some confusion in the testimony of appellant as to where the arraignment took place, that is, before the justice of the peace or the circuit court, appellant testified his counsel was present. However, in view of his subsequent pleas of guilty it is immaterial whether there was in fact no arraignment or for some reason an improper arraignment. Announcing ready and going to trial constitutes a waiver of formal arraignment, State v. Ferris, 322 Mo. 1, 16 S.W.2d 96; State v. Vallo, Mo., 33 S.W.2d 899, and the voluntary entry of a plea of guilty with counsel present would necessarily have the same effect.

■ Appellant contends that his pleas of guilty were "coerced and induced," but this is in no way developed in his brief. We cannot determine what appellant contends to have constituted coercion and inducement, unless it be that according to his testimony his counsel and the prosecutor told him they would get him out of prison in five years. This was denied, and in view of the severity of the crimes this testimony of appellant is so unrealistic as to be unworthy of belief in any event. The trial court found this fact issue adverse to appellant's contention. The finding has ample support in the evidence and is not clearly erroneous.

■ Appellant next contends that the informations were defective in that they each failed to allege an intent to kill. He relies on State v. Recke, 311 Mo. 581, 278 S.W. 995, State v. Hyde, 234 Mo. 200, 136 S.W. 316, and State v. Cunningham, Mo., 380 S.W.2d 401. We find that these cases do not support his position.

In this case the informations charged that appellant " * * * feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, did make an assault, and with a dangerous and deadly weapon * * * did shoot * * * [Albert Foltz in one and Ladwin Foltz in the other] in and upon the back of the head and neck * * * of which mortal wound the said * * * then and there died instantly * * *."

At common law it was not required that an indictment for murder allege a specific intent to kill. It is only in those jurisdictions where the intent or purpose is by statutory definition made an ingredient of murder that the specific intent must be alleged. 40 C.J.S. Homicide § 157. Murder in the first degree is defined in § 559.010, V.A.M.S., and it does not incorporate an "intent to kill" as an element. Instead, it provides that "Every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, * * * shall be deemed murder in the first degree." In State v. Stringer, 357 Mo. 978, 211 S.W. 2d 925, it was held that the allegation that the defendant willfully killed the deceased meant that act was intentional. However, an allegation in the words of the statute is sufficient. In the recent case of State v. Floyd, Mo., 403 S.W.2d 613, the indictment charged that the defendant in that case "feloniously, wilfully, premeditatedly, deliberately, on purpose, and of his malice aforethought did make an assault * * * thereby feloniously inflicting a mortal wound, from which said mortal wound * * * did die * * *." It was held that "The indictment sets out the method and means by which the death of deceased was effected by defendant and contains all the necessary elements to charge murder in the first degree." See also State v. Laxson, Mo., 220 S.W. 885; and State v. Goodwin, 333 Mo. 168, 61 S.W.2d 960. This contention of appellant is without merit.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

DONNELLY, P. J., MORGAN and FINCH, JJ., and SPRINKLE, Special Judge, concur.