Joe Henry BARROW, Jr., Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 57122.

Supreme Court of Missouri, Division No. 1.

Nov. 13, 1972.

Robert H. Sihnhold, Clayton, for movant-appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

WELBORN, Commissioner.

Appeal, filed in this court prior to January 1, 1972, from denial of relief in proceeding under Supreme Court Rule 27.26, V.A.M.R., to set aside convictions on pleas of guilty to charge of robbery with a deadly weapon, attempted robbery with a deadly weapon and carrying a concealed weapon. Sentences, to run concurrently, of ten, ten and five years were imposed in the respective cases.

In the early morning hours of December 25, 1968, Joe Henry Barrow, Jr., was arrested by a St. Louis police officer who went to the vicinity of where he had heard three shots and saw Barrow take a gun from his person and throw it away. The officer arrested Barrow. He was charged with carrying a concealed weapon, with attempted robbery out of the incident in which the three shots were fired (the victim was wounded) and another robbery which had occurred approximately one half hour earlier. At a lineup held on December 25, the victim of the robbery identified Barrow. Barrow was taken to the hospital and viewed by the victim of the attempted robbery and identified by him. A representative of the Public Defender's Office, Mr. Hubel, was present at the lineup and at the hospital confrontation.

A short time after his arrest, Barrow appeared in the Court of Criminal Correction. Prior to his appearance there he was interviewed by a representative of the Public Defender's Office, Mr. Moore, who advised him to plead not guilty.

On January 24, 1969, Barrow appeared in the circuit court for arraignment on the three charges. Mr. Noskay, the head of the Public Defender's Office, discussed the charges with Barrow. When the cases were called, Barrow, represented by Mr. Hubel, entered pleas of guilty to the three charges and was sentenced as above set out.

On September 29, 1970, Barrow filed a pro se motion to set aside his convictions and pleas. An attorney was appointed to represent Barrow and an amended motion was filed. The grounds of relief specified were that the pleas were involuntary and that defendant was denied the effective assistance of counsel.

At the hearing on the 27.26 motion, Barrow testified that he was then 31 years of age and had a seventh grade education. He stated that he was not aware that anyone representing him was present at the

lineup and hospital identification procedures. He talked to an attorney for the first time for ten or fifteen minutes before the appearance in the Court of Criminal Correction. The attorney told him that things looked bad for him, but that he should plead not guilty in the Court of Criminal Correction proceedings. He next saw an attorney when Mr. Noskay talked to him on the day of the arraignment and plea. He said that Noskay did not tell him that he had three charges pending against him and that he did not know of the three charges until he entered the courtroom. He also stated that Noskay said nothing about the right to trial by jury. Noskay did tell him that the maximum penalty was death, but that since no one was killed, death was unlikely but that he could wind up with a life sentence. He said that Noskay told him he could plead guilty and get a 10-year sentence. He said Noskay gave him fifteen or twenty minutes to think about it and told him that if he didn't plead guilty, the judge would get mad and give him a life sentence. He also said that Noskay gave him the impression that if he did not plead guilty, he would go to trial that day. Barrow then told Noskay that he would accept the ten years. "I figured I could do the ten years; I couldn't do the life sentence."

Barrow was then taken before Judge McMullan where Mr. Hubel represented him. The transcript of the sentencing proceedings showed that Barrow first entered a plea of guilty to the robbery charge. He acknowledged that he understood the range of punishment and replied negatively to inquiries by the court as to whether he had been promised probation or parole or threatened. He replied affirmatively to an inquiry as to whether he was acting willingly, after having had an opportunity to discuss the matter fully with representatives of the Public Defender's Office. The charge was read and Barrow admitted that he held a man up with a pistol and took a jacket, a watch and a billfold from him.

The attempted robbery charge was then considered. Again, Barrow responded affirmatively when asked whether he had gone over the case with the Public Defender's Office or got their advice and whether he was satisfied with the advice. The charge was read and Barrow agreed with the statement of what occurred in that charge.

The charge of carrying a concealed weapon was then taken up and a plea of guilty entered. The court explained that the charge arose out of the carrying of the gun used in the robbery and attempted robbery and Barrow acknowledged that he understood. The prosecution recommended ten, ten and five-year sentences on the three charges which were imposed. Barrow's request for a bench parole was denied.

Barrow testified that he was never told that he had a right to jury trial, that no possible defenses were discussed by representatives of the Public Defender's Office and that he had no opportunity to discuss the matter with his wife before entering the pleas.

Mr. Hubel of the Public Defender's Office testified that he was present at the lineup and hospital identification. He did not recall whether or not he introduced himself to Barrow and did not discuss the charges with him. When he appeared with Barrow before Judge McMullan, he was aware of the content of the discussion between Noskay and Barrow and had the file which contained a report of the interview at the time of the Court of Criminal Correction appearance. He did talk to Moore who interviewed Barrow, but never talked to Barrow about the charges.

Mr. Noskay had no recollection of the events of January 24, 1969. He testified that at that time the docket was quite crowded and representatives of his office did not have an opportunity to discuss the cases of all defendants before they appeared for arraignment. Therefore, one

representative of the office appeared in court with defendants whose cases had been discussed while another was outside the courtroom and discussed the cases with the assistant circuit attorney in the presence of the defendant before the defendant entered the courtroom. The circuit attorney would state what he expected to prove and what he would recommend on a plea of guilty. The matter would then be discussed with the defendant and the Public Defender would advise him whether the circuit attorney's offer seemed a fair and proper disposition.

The trial court made the following findings:

"At the time the pleas were entered and accepted and sentences imposed, the defendant was represented in Court by an experienced member of the Public Defender's staff, George Hubel, and the head of the Public Defender's Bureau, Joseph Noskay, had gone over the matter with the defendant. He had stated to the Court that he had ample time to discuss the matter with Mr. Noskay and the evidence revealed he previously had been interviewed by Mr. Richard Moore of the Public Defender's Bureau.

"Movant complains that his pleas were involuntarily entered. The transcript of the proceedings shows otherwise. The testimony of Joseph Noskay is clear that no force was used nor were any promises made. The testimony of the defendant himself that 'I told them I could do the ten years but not life—yes, I can do that —yes, I can do ten years.' is evidence that the defendant's pleas were voluntarily made.

"He testified at the 27.26 hearing that the charges and facts were outlined to him but he claims that he was not advised of his right to a trial by jury.

"This is not a necessary step in complying with Supreme Court Rule 27.04. Patrick v. State, Mo., 460 S.W.2d 693.

"His testimony that Mr. Noskay advised him that the judge would 'get mad' at him if he pled not guilty is wholly incredible. His complaint that he was not advised on defenses falls on its face in the absence of any suggestions that he had one.

"His testimony that no one advised him that there were three charges against him is contrary to what is proven by the transcript of the record and is obviously without merit.

"One of the purposes of interrogation by the Court in accepting a plea of guilty is to determine whether or not the defendant understands what he was doing and the consequences of his entering a plea and that he did in fact commit acts constituting the crime charged. A review of the proceedings demonstrates that the Court determined the plea was voluntarily made with understanding and that the defendant committed the acts constituting the crimes as charged and to which he pled and was sentenced.

"No showing has been made by movant to warrant a finding that a constitutional right was denied."

Appellant has not demonstrated that the trial court's findings are clearly erroneous. Supreme Court Rule 27.26(j), V.A.M.R. No contention is made that the pleas of guilty were the result of promises or coercion. The basic thrust of appellant's argument is that the pleas were not knowing and voluntary because he did not receive adequate assistance of counsel. The trial court had before it, on the one hand, appellant's testimony of a brief cursory discussion of the charges with the Public Defender prior to the entry of the pleas, and, on the other hand, appellant's statement at the time of the pleas that he had had adequate discussion of the charges with the Public Defender and the testimony of the Public Defender as to the practice of his office in such cases. In those circumstances, the trial court was required to resolve the question and on the evidence be-

fore him, his decision is not clearly erroneous. Nor can the trial court's conclusion that the plea was voluntary, based upon appellant's acknowledgment that he could do ten years but not life, be clearly erroneous. That statement reveals the basic thought behind the plea and in no manner demonstrates an involuntary or unknowing plea.

■ Appellant now complains that there was no investigation of possible defenses or preparation for trial. The case had not proceeded to the point where trial preparation was required. The only defense suggested was based upon the allegedly improper confrontation at the hospital between appellant and the victim of the attempted robbery. The lack of knowledge of the possibility of a basis for objection to the testimony of the victim did not preclude voluntary and understanding pleas. Edwards v. United States, 103 U.S.App. D.C. 152, 256 F.2d 707; Hulett v. State, Mo.Sup., 473 S.W.2d 410. The absence of discussion of this possible basis of objection, applicable in only one of the three cases, does not present a situation where correction "of manifest injustice" requires permitting withdrawal of the pleas. Supreme Court Rule 27.25, V.A.M.R.; Carter v. State, Mo., 472 S.W.2d 370. The same is true of the claim that counsel did not discuss the right of trial by jury. Defendant had three convictions prior to the present cases and although he states that counsel did not discuss the right of jury trial, he in no manner professes ignorance of such right and his experience renders such ignorance improbable. Carter v. State, supra.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.