Phillip Odell CLARK, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 57465.

Supreme Court of Missouri,
Division No 2.

July 16, 1973.

capacity to understand the proceedings against him and assist in his own defense; that the magistrate court ruled these issues solely upon the basis of the report of findings of physicians who examined appellant at a state hospital; that although appellant's counsel informed the magistrate court that appellant was contesting these findings and desired a hearing on the issue of competency and subpoenaed two of the physicians to testify on the issue, the magistrate judge limited the attorneys to an examination of the witnesses "in the ordinary course of the preliminary hearing."

■ This point is disallowed for two reasons: First, if there was any procedural or constitutional infirmity in the proceedings at the magistrate level, it was nonjurisdictional and was waived by the subsequent plea of guilty in circuit court, which as presently will be seen, was voluntarily made with understanding of the nature of the charge. Shoemake v. State, 462 S.W.2d 772, 781 [16] (Mo. banc 1971); Robinson v. State, 491 S.W.2d 314, 315 (Mo.1973); Pauley v. State, 487 S.W.2d 565, 566 (Mo.1972); Geren v. State, 473 S.W.2d 704, 707 (Mo.1971). Second, on the merits, the circuit court's determination that in fact appellant *was given* the hearing provided for by § 552.020(6) is not clearly erroneous. Substantial evidence appears from the transcript of the proceedings in magistrate court and in the testimony of one of appellant's attorneys at the 27.26 hearing that such a hearing was held, at which the examining physicians were called, testified "on behalf of" appellant and were interrogated. While there is no record that the magistrate judge made a formal written entry specifically overruling appellant's motion, the record indicates that he did so orally, and a finding of mental competency is implicit in the magistrate's order binding appellant over for trial in the circuit court. In an analogous situation an order transferring a case from the mental examination docket to the trial docket was held tantamount to an order finding that the defendant was fit to pro-

Kenneth L. Waldron, Jackson, for movant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City for respondent.

HOUSER, Commissioner.

Phillip Odell Clark appealed prior to January 1, 1972 from an order overruling his Rule 27.26, V.A.M.R., motion to vacate a sentence of life imprisonment entered upon a plea of guilty to a charge of first degree murder.

Appellant's first point is that the circuit court erred in not vacating the sentence because at the time of the preliminary hearing appellant was denied due process of law in that the magistrate judge refused to hold an evidentiary hearing as requested by appellant by motion, and refused to make a ruling thereon as required, under § 552.020, RSMo 1969, V.A.M.S., on the issue of his fitness to proceed and mental

ceed. Jones v. State, 471 S.W.2d 223 (Mo.1971).

■ The next question is the voluntariness of the guilty plea. Appellant contends that the plea was involuntary because of coercion and intimidation of a psychological nature which created a condition of mind rendering appellant unable to analyze his situation and make a logical and intelligent choice whether to plead guilty. Appellant argues that there was a carnival-like atmosphere surrounding his first detention at the police station; that an incriminating statement was taken from him under conditions resembling a deposition but without counsel, at a time when appellant was under extreme emotional tension resulting from lack of sleep, excessive and recent drinking of intoxicants, regular and recent use of narcotics, lack of food and nausea; that undue and "outrageous" publicity surrounded the case, creating a situation in which a fair hearing was impossible; that the circuit judge visited appellant at the jail and directed removal of his privileges; that appellant was confined in the county jail under conditions amounting to cruel and unusual punishment; that one Graeble a witness whose testimony was crucial to the defense, was subpoenaed but failed to appear at the preliminary hearing and could not thereafter be located, and that "inordinate amounts of perjured and tainted testimony" were used against appellant at the preliminary hearing.

In its findings of fact and conclusions of law the circuit court made a painstaking, item-by-item analysis of the evidence in connection with each of the points raised, and concluded that appellant failed to sustain his burden of proof with respect to each of the above assertions; that there was no evidence that his guilty plea was influenced by any of them; that appellant was represented at his arraignment by two attorneys whose actions and competence in representing appellant were not challenged or criticized; that the plea of guilty was voluntary. The record supports the conclusion of the circuit court that appellant's confession was taken under circumstances altogether different from those claimed by appellant and not in prejudice of his rights; that there was no evidence that appellant was intoxicated or drugged at the time; that the confession was not placed in evidence or otherwise considered by the sentencing court; that there was no showing that the news coverage was inaccurate, exaggerated, unnecessarily descriptive, or editorial in nature, so as to prejudice appellant's ability to obtain a fair trial; that the case was not heard by a jury and there is nothing to indicate that the sentencing judge read or was influenced by the news reports; that when the circuit judge visited appellant at the jail he merely told appellant to quit yelling and to behave himself in the jail, or he would be sent to the penitentiary; that his blanket and mattress were withdrawn from appellant for only two days and were restored to him two weeks before his plea was entered; that there was no showing of cruel and inhumane treatment as a matter of law[1]; that there was no showing what the absent witness' testimony would have been, or that because of his absence appellant was prejudiced; that there was no showing that perjured or tainted testimony was used against appellant, and no showing that any of the challenged testimony was in fact erroneous, exaggerated or false or that there was a factual basis for the conclusory allegations of perjury.[2] The trial court considered and obviously rejected appellant's

1. "Dissatisfaction with a penal condition, brought about by one's own conduct, and a hope that by a guilty plea a different kind of incarceration might be achieved are scarcely factors of involuntariness in a plea." Quotation from Verdon v. United States, 296 F.2d 549, 552 (8th Cir. 1961), cited, along with many other authorities, in Swain v. State, 492 S.W.2d 778, 780 (Mo.1973).

2. In this connection see Mace v. State, 452 S.W.2d 130, 135 [9] (Mo.1970); State v. Moore, 435 S.W.2d 8, 16 (Mo. banc 1968); State v. Pope, 411 S.W.2d 212, 214–215 (Mo.1967).

testimony contrary to these findings, as was its prerogative, and we find no fault with the court's determination of the credibility of the witnesses. On this record the judgment of the circuit court on this point is not "clearly erroneous."

Appellant's third point raises the question whether appellant's plea of guilty was improperly accepted without making an inquiry into the circumstances surrounding the charge or inquiring of appellant whether he had done the acts with which he was charged, and without giving appellant an opportunity to relate "his side of the situation." The transcript of the proceedings at which appellant pleaded guilty and was sentenced occupies 18 pages. It reflects a full, complete and unhurried proceeding. In order for appellant to know what he was charged with the judge read the charge to him verbatim. Appellant indicated affirmatively that he understood the charge. The charge of previous criminal activity for purposes of the Habitual Criminal Act was explained. One of appellant's two attorneys stated to the court that the operation of that act had been explained. Appellant agreed. Appellant twice acknowledged to the court that he understood the first portion of the information charging him with the murder of Zona D. Clifton on or about October 1, 1966. He further answered affirmatively questions whether he had an opportunity to discuss the case with his lawyers, whenever he desired; whether he understood his right to a trial by jury if he pleaded not guilty; whether he was satisfied with his lawyers, with whom he had consulted many times; whether he knew his constitutional rights, the range of punishment and that the court fixed the punishment after listening to recommendations of prosecuting attorney, defense counsel and any other facts "that any of you desire to make known to the Court." Appellant answered negatively to questions whether anyone had denied appellant the right to talk to his lawyers, friends or relatives; whether anyone in the sheriff's office or any other law enforcement office had mistreated him in any way; whether anyone had threatened him in any way or made him any promises; whether he had any complaint whatsoever concerning the cooperation, help and advice his lawyers had given him, or their promptness in seeing and talking with him; whether anyone abused or threatened him in connection with the statement given after his arrest, and whether he had made any statements under conditions that had deprived him of his right to be heard and his right to refuse to make a statement. The prosecuting attorney (who recommended the death penalty) made a 3-page statement of the facts and circumstances surrounding the case, descending into great evidentiary detail. Neither appellant nor his counsel corrected or disputed the prosecutor's recital in any particular. The two defense counsel made separate pleas for leniency based upon appellant's past social and legal history, in an effort to explain the background out of which the crime emanated. The court inquired into appellant's age and formal education, residence, employment of his father, etc. In accepting the plea of guilty the court advised appellant that because of his age and other factors his punishment would be fixed at life imprisonment. Granted allocution, appellant said "Well, I have thought about it a lot and, well, everybody has got up and they have told their side of it, and everybody has pretty well told what they think about the deal, but you see, nobody really knows about the crime but me because *I am the person that committed the crime. I know why the crime was committed and under what circumstances,* and as far as my past life or anything like that, I don't see where bringing up my past police record—I don't really think that should be done, but it has been done and I think I have been punished according to law for the crimes that I have committed before, and I don't know—I just think everybody has had their say about what happened but me, and I am the one that is supposed to have committed the crime, and before my Court trials, I always just went up and

just pled guilty or something, but if I could at this time, I would like to tell my side of it." (Our emphasis.)

At this point defense counsel asked for time to consult with appellant in chambers, after which the court asked, "Anything further to add?" Appellant had nothing further to say, except to request leave to remain in the jail for a few days to visit with friends and relatives before going to the penitentiary.

■ Following the 27.26 hearing the circuit court found that appellant was adequately informed as to the circumstances surrounding the charge; that the sentencing court properly accepted the plea of guilty; that appellant was given all the opportunity he requested to speak to the court, and was not denied the opportunity to say anything about his version of the occurrence or any other topic. This finding is not clearly erroneous. On the contrary, this finding is clearly free of error and is fully substantiated. The record demonstrates that the facts and circumstances surrounding this murder were fully explored at the hearing; that appellant fully understood the nature of the charge and the evidence with which he was confronted; that appellant pleaded guilty to a charge which had been described and delineated with great particularity; that he was given every opportunity, personally and through two concerned and faithful lawyers, to admit or deny, explain, interpret or limit his participation in this killing, or to express himself otherwise in connection with the case, and that he took advantage of the opportunity to the extent that he desired.

■ Appellant makes the further point that the information failed to charge the offense of first degree murder in that it failed to allege that appellant had any intent to kill; that intent to kill is a necessary element in charging murder in the first degree under § 559.010 RSMo 1969, V.A.M.S.:

"Every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, * * * shall be deemed murder in the first degree."

The information charged that appellant "wilfully, unlawfully, and feloniously, premeditatedly, deliberately, and of his malice aforethought did make an assault, * * *."

Citing Patrick v. State, 460 S.W.2d 693, 698–699 (Mo.1970), the trial court held that the information properly charged first degree murder; that while intent to kill is a necessary element of the offense of first degree murder, such element need not be alleged in those words; that the information, in the words of § 559.010 RSMo 1969, V.A.M.S., defining first degree murder, is sufficient. The word "wilfully" is the legal equivalent of the word "intentionally" and a charge that a killing was done wilfully is a charge that it was done intentionally. See State v. Marston, 479 S.W. 2d 481, 483–484 [2, 3] (Mo.1972). The trial court properly declared the law and appropriately cited the Patrick case, which decided this precise point contrary to appellant's contention. The information is not subject to the attack made by appellant.

Finally, appellant claims denial of due process of law because of "the inordinate delay of the court below in acting upon movant's motion to vacate and in the absence of [defense witness] Robert W. Graeble from the preliminary hearing."

■ Appellant does not specify in what manner he was denied due process of law. If by the term he means that he was denied a speedy trial as guaranteed by U.S. Const. Amend. VI, and Mo.Const. Art. I, § 18(a), V.A.M.S., he must be denied on the basis that these constitutional safeguards apply only to criminal prosecutions and not to motions to vacate filed under Rule 27.26, which are in the nature of civil

actions. State v. Davis, 438 S.W.2d 232 (Mo.1969).

 More to the point, a complaint that a court unduly delayed hearing and disposing of a motion to vacate filed under Rule 27.26 is not one cognizable on such a motion or on appeal from an order overruling such a motion. Rule 27.26 is reserved for claims of right to release from custody on limited grounds, all of which are related to the sentence sought to be vacated viz., that the sentence was imposed in violation of state or federal constitutional provisions; that the court imposing the sentence was without jurisdiction to do so; that the sentence was in excess of the maximum sentence authorized by law; or that the sentence is otherwise subject to collateral attack. Appellant's point is not an attack upon the sentence, but is an assertion that he is entitled to release because of delay in hearing and adjudicating his motion to vacate the sentence. As pointed out by the circuit court, "[t]his attack is a challenge upon the Rule 27.26 hearing itself and not upon the sentence rendered May 1, 1967." This is not the proper proceeding or forum in which to mount an attack upon the court's delay in adjudicating the motion.

 The absence of appellant's witness Graeble at the preliminary hearing does not entitle appellant to have this sentence vacated. In the first place, if this constituted a defect it was a nonjurisdictional defect in a prior proceeding, which was waived by voluntarily and understandingly pleading guilty. Robinson v. State, supra. In the second place, appellant did not show to what the witness would have testified; what effect the witness' testimony would have had upon appellant's decision to plead guilty; or how or in what manner appellant was prejudiced by the absence of the witness.

No error appearing, the judgment is affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court.

HENLEY, P. J., DONNELLY, C. J., and MEYER, Special Judge, concur.

MORGAN, J., not sitting.

FINCH, J., not a member of Division when cause was submitted.