Harold Lindell SHOEMAKE, Appellant,

v.

STATE of Missouri, Respondent.

No. 54746.

Supreme Court of Missouri, En Banc.

Feb. 8, 1971.

W. Oliver Rasch, Bonne Terre, for appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

WELBORN, Commissioner.

Appeal from denial of relief in proceeding to set aside judgment and sentence of life imprisonment, entered upon plea of guilty.

On Sunday morning, June 9, 1957, shortly after midnight, Porter Dorsey was found shot to death in his house in a rural area of Wayne County. On Sunday afternoon, appellant, Harold Lindell Shoemake, was taken into custody at Fredericktown by a member of the Missouri State Highway Patrol, who turned Shoemake over to the sheriff of Wayne County, Elmer Chatman. Shoemake was taken to the Wayne County jail at Greenville and questioned by Chatman, Roy McGhee, Jr., prosecuting attorney of Wayne County, and members of the highway patrol. Shoemake was held in jail Sunday night. The next morning he was again questioned by Sheriff Chatman. In the course of the interrogation, Shoemake admitted that he had shot Dorsey and wrote a statement, as follows:

"I have not been threatened or promised anything in this trial. I have been advised of my rights that I do not have to make this statement but I make this statement on my free will and accord in order to clear up the Porter Dorsey murder case.

"I came down from St. Louis on June 8, 1957, with Henry Lee and we went to Seabaugh's and had a few drinks and then we went to the Diamond Bar and drink one beer and then we went to the Plantation about 5:00 and Henry Lee left me there about 9:00 and then Estel came down there so I went back to Fredericktown with him and I went to Lee Roach's house and went in and got his 16 ga. shotgun and forced Estel to take me to Porter Dorsey's. We left the car at the creek. I pulled my shoes off and walked to the house where I found Porter laying on the bed. I got him up and told him what I was going to do. I shot him 3 or 4 times, I don't remember, and then I went back to Fredericktown to my mother's home and put the gun back where I had got it and then I went to bed and stayed there until I was arrested by Sgt. Hollman of the State Highway Patrol."

On June 10, 1957, a complaint charging Shoemake with first degree murder in Dorsey's death was filed in the Wayne County Magistrate Court.

On June 19, 1957, a preliminary hearing on the charge was held in the magistrate court. Shoemake was represented at the hearing by Robert I. McIlrath, an attorney employed by members of Shoemake's family. The coroner and sheriff testified at the preliminary hearing and Shoemake was bound over to the circuit court and remained in jail, the magistrate concluding that the offense was not bailable. On July 1, 1957, an information was filed in the circuit court, charging Shoemake with murder in the first degree.

On September 4, 1957, Shoemake appeared in the Wayne County Circuit Court. Attorney McIlrath was not present and the court appointed Ronald M. Ross to represent Shoemake. The case was set for trial on September 23, 1957. On that date, Shoemake appeared before Judge Eversole, Judge of the Wayne County Circuit Court, accompanied by attorney Ross. A plea of guilty was entered and, after granting allocution, the court pronounced sentence of life imprisonment.

This proceeding originated in a pro se motion to vacate the judgment, filed in the Wayne County Circuit Court on March 17, 1967. On September 7, 1967, Robert B. Baker was appointed to represent Shoemake and on February 16, 1968, an amended motion was filed on behalf of Shoemake. The grounds for relief (including an amendment by interlineation) were:

"(a) Movant was harassed, brow-beat, threatened, made promises of leniency and put in great fear for his life until movant agreed to write a statement and/or confession.

"(b) This took place without the aid of counsel. Movant was without legal assistance at his arraignment.

"(c) Movant's plea of guilty was not voluntary, it was made under the influence of promises and coercion on the part of the Wayne County Sheriff, further, movant did not enter the plea, rather his attorney did for him.

"(d) The Bill-of-Information is fatally defective, in that: It was filed in the March term of Court and was not tried until the September term of Court. Further, the Bill-of-Information is based solely on the uncorroborated statement and/or confession of movant.

"(e) Movant was forced to trial in such a way as to deprive him of the effective assistance of counsel.

"(f) The complaining witness in this case did not have actual knowledge of the alleged facts set forth in the complaint.

\* \* \* \* \* \*

"(g) Movant was denied due process of law in that he was denied the effective assistance of counsel, because counsel was incompetent to advise him on the merits of this charge, in violation of Article 1 Section 10 of the Missouri Constitution [V.A. M.S.] and Amendments 5 & 14 of the United States Constitution.

"(h) Movant was not represented by counsel at a critical stage in the proceedings in his case, to-wit: at the arraignment before the preliminary hearing, wherein the complaint was read to him and he entered a plea of guilty to the complaint as made, and this was recorded by the Magistrate in the Transcript of the proceedings, in violation of Article 1 Section 10 of the Missouri Constitution · and Amendments 5 & 14 of the United States Constitution."

An evidentiary hearing on the motion was held in the Wayne County Circuit Court. The court made findings of fact and conclusions of law and denied relief. This appeal followed. Mr. Baker died pending the appeal and Mr. Oliver Rasch was appointed to represent appellant in this court.

The issues on this appeal are primarily factual rather than legal. The appellant complains that the trial court's findings were contrary to the "preponderance of the credible evidence," or to the "undisputed evidence." However, we do not weigh the evidence on this appeal. The weight of the evidence and credibility of the witnesses are matters for the trial court. Our function is to determine whether the judgment of the trial court was "clearly erroneous." Supreme Court Rule 27.26(j), V.A.M.R.; Crosswhite v. State, Mo.Sup., 426 S.W.2d 67. In our review we recognize that the trial court had the right to reject testimony on behalf of the movant, even though there was no contrary evidence offered at the hearing. That is particularly true when the favorable testimony came from appellant himself, with an obvious interest in the outcome, and the proceedings for relief arose sometime after the events in question and after death had removed from the scene persons with direct knowledge of the events, such as Mr. Ross and Sheriff Chatman. State v. Hamel, Mo.Sup., 420 S.W. 2d 264, 267[3, 4], [5].

Turning to the issues on this appeal, appellant first contends that the trial court's finding that appellant's statement of June 10, 1957 was voluntary is erroneous because it is contrary to the preponderance of the credible evidence which showed that the statement was induced and coerced by threats of the sheriff to charge appellant's brother with murder if appellant did not sign the statement; that it was induced by a promise by the sheriff to release the brother if appellant would sign the statement; that the statement was the result of incommunicado interrogation in an unfamiliar and menacing atmosphere.

The statement was not used as evidence, appellant having pleaded guilty. However, appellant asserts that the voluntariness of his plea was affected by the involuntary statement. In view of the trial court's rejection of the contention of the involuntariness of the statement, a finding

which we do not find clearly erroneous, we need not pursue the question of the relevancy of an involuntary statement to the voluntariness of a plea of guilty. See Mitchell v. State, Mo.Sup., 447 S.W.2d 281.

There is unquestionably evidence to support the finding which appellant asserts the trial court should have made. Appellant himself testified in accordance with what he now says the preponderance of the evidence showed. His brother, Estel Shoemake, testified that he was arrested on June 9 in connection with the Dorsey shooting; that the next day he was brought to the room where the sheriff was questioning appellant and that the sheriff told appellant that if he would sign a statement, they would release Estel; that appellant then wrote the statement.

On the other hand, the sheriff testified at the preliminary hearing that the statement had been made to him after appellant had been advised of his rights and that no threats or promises were made to appellant. Sergeant Wright of the highway patrol, who was present when appellant admitted the shooting and who saw appellant write the statement, testified that, prior to the questioning, appellant was advised of his right to an attorney, that he could call an attorney or any other person, that he was not required to make a statement and that what he said might be used against him. Sergeant Wright testified that he made no threats or promises and that none were made in his presence. Sergeant Wright testified that he heard no promise of leniency to Estel as an inducement for the statement by appellant. Deputy Sheriff Alexander, the jailer who was present during portions of the interrogation, could recall no threats or promises to appellant.

The trial court resolved the conflict in testimony against appellant. We are not convinced that the finding urged by appellant was the only one which the evidence called for. The court's finding is supported by positive testimony. We do not find it clearly erroneous.

Appellant next contends that he was deprived of counsel of his own choice. He contends that his employed counsel, Mr. McIlrath, was not notified of the September 4th call of the case and of the September 23rd setting of the case for trial; that, as a result of the lack of notice to McIlrath, appellant was forced to accept the services of appointed counsel and proceed in the case, thereby being deprived of the right to counsel of his own choice.

Appellant's stepfather, Mr. Roach, asked Mr. McIlrath, whose office was in Flat River, to look into representing appellant. McIlrath went to Greenville and saw appellant. Mr. McIlrath told Roach he would take the case. McIlrath set a fee of $500 and Roach paid $100 at that time. McIlrath represented appellant at the preliminary hearing. According to appellant, McIlrath told him after the hearing that he was going to Florida for a vacation; that no effort should be made to obtain appellant's release on bail, but the matter should be allowed to "cool." The record shows no further contact with McIlrath by appellant or anyone on behalf of appellant until sometime after the guilty plea had been entered.

Appellant testified that he had no advance notice of the September 4th call of the case. He testified that when the case was called, Judge Eversole asked where appellant's lawyer was and appellant replied: "I don't know. I didn't know I was supposed to go to Court today." The court granted appellant's request for permission to call his mother to find out about McIlrath. He called his mother who told appellant, "I will go see." The record is silent as to any efforts appellant's mother made to get in touch with McIlrath. When appellant came back into court and reported on his call to his mother, the court, according to appellant, said: "Well, they can't keep you up there in jail forever. The first day of September term of Court we are going to get rid of you one way or another. I am going to appoint Mr. Ross here to represent you and you

are going to have a lawyer next time you come to court." The judge's minutes in the case for September 4 recite: "Ronald Ross, Atty appt to consult and advise with the Defendant and prepare for Trial to begin on September 23, 1957."

McIlrath testified that he considered himself hired for the entire case. He did state, however, that the $100 which he did receive was the charge for the preliminary hearing. McIlrath also stated that his arrangement was "generally" that he was to get the $400 before the trial, "altho I have known Lee Roach a long time and I have done business with him. If he tells me he is going to do something he does it. I wouldn't have worried too much either way."

■ In our opinion, this evidence justifies no further conclusion than that of the trial court that McIlrath failed to remain active in the case following the preliminary hearing. Any attempt to explain McIlrath's inactivity must rest on conjecture. Appellant asserts that it was caused by the trial court's failure to notify McIlrath of the September 4th and September 23rd settings. Other than his failure to be present, there is no basis for assuming that McIlrath had no notice. His testimony was that he couldn't "remember too much" what happened in the case after the preliminary. Certainly McIlrath knew that defendant had been bound over to the September Term of the Wayne County Circuit Court and was chargeable with knowledge that September 23 was the first day of the September Term. § 478.273, RSMo 1949, V.A.M.S. (since repealed). An equally reasonable supposition is that McIlrath's interest in the case subsided when the fee was not forthcoming. His testimony on this aspect is equivocal. In any event, appellant did not demonstrate that he was denied the right to have counsel of his own choice. He did have such counsel originally, but for some unexplained reason, that counsel failed to remain active, as the trial court found. Inactivity on the part of appellant's chosen counsel does not mean that appellant was thereby deprived of the right to counsel of his choice.

Appellant's third contention is that he was denied effective assistance of counsel because the evidence showed, without dispute, that appointed counsel, Mr. Ross, conferred with appellant only on the date of the guilty plea and then only for ten minutes; that he made no adequate investigation of the case; that, by reason of ill health, age and lack of recent experience in criminal matters, Ross was in no position to try a criminal case; that Ross failed to take certain steps on behalf of appellant. The trial court found that appellant had filed to show by a preponderance of the credible evidence that court-appointed counsel failed to render effective assistance. The question here is whether that finding was clearly erroneous.

Support for the appellant's claim of ineffective assistance of counsel depends almost entirely upon the uncorroborated testimony of appellant. He testified that he did not see Ross in the courtroom on September 4 and that he talked to Ross thereafter only for about ten minutes prior to entry of the plea of guilty on September 23. Appellant testified that Ross was an old man, 65 or 70 years of age, in ill health, who told him that he hadn't handled a criminal case in twenty-five years.

■ Ross was dead at the time of the hearing. We note that the charge of ineffective assistance of counsel was added at the beginning of the hearing. According to appellant, he had been unaware of Ross's death until informed of it by his counsel on the motion. Ross was unable to defend himself against appellant's charges. However, the fact that they were uncontradicted by testimony at the trial does not require the trial court to accept appellant's testimony. State v. Hamel, supra. There were, in fact, glaring inconsistencies in appellant's testimony about Ross's services. Appellant testified on two separate occasions about the session of September 4.

The hearing on appellant's motion began on November 1 and, after a recess, concluded November 8. At the November 1st hearing, appellant testified as follows about what transpired on September 4:

"[T]he judge said, 'Well, they can't keep you up there in jail forever.' He said, 'The first day of September term of Court we are going to get rid of you one way or another. I am going to appoint Mr. Ross here to represent you and you are going to have a lawyer next time you come to Court.' So, he appointed him."

The appellant further stated on this occasion, when asked by the court when Ross was appointed to represent him, "It was about two weeks before I went to trial."

At the November 8th hearing, appellant testified as follows:

" * * * I never said nothing about Ross and I never seen him. As far as I know, I didn't really know the man was ever appointed for me. The judge told me here, he said, 'I am going to give you a lawyer and see you got one the next time you come down here to Court. We are going to get rid of you one way or another. You are either going to get out or get what you are going to get.' It was to my knowledge, I didn't have no legal knowledge whatsoever. I didn't realize what he was doing. He said he was going to see I had a lawyer, so when Mr. Ross was down here that is the first time I seen him and really that is the first time I ever knowed he was my lawyer."

This obvious effort to bolster the effect of his testimony undoubtedly did not pass unnoticed in the trial court. Appellant testified that Ross told him that he hadn't handled a criminal case in twenty-five years. However, appellant's mother testified that Ross had been hired to represent appellant's brother, Estel, in another case, this employment being after McIlrath had been employed to represent appellant. Appellant testified that Ross did talk to him in the jail about his case. However, appel-

lant placed the date of such conversations as prior to the appointment of Ross. Again, the trial court was not required to believe that the conversations occurred prior to the appointment. Any conclusion that Ross did not investigate the case is met by appellant's testimony that Ross told him that he had talked to the sheriff, the highway patrol and the prosecutor about the case.

■ Appellant argues that Ross's inadequate representation is demonstrated by his failure to have moved for a continuance because the transcript of the testimony of the witnesses at the preliminary hearing had not been filed in the circuit court. Considerable attention at the hearing on the motion was directed to the question as to whether the transcript of the witnesses at the preliminary had been filed in the circuit court as required by § 544.370, RSMo 1959, V.A.M.S., and Supreme Court Rule 23.12, V.A.M.R. The only copy produced at the hearing had been discovered in the files of the United States District Court in which appellant had sought relief. No mark of its having been filed in the Wayne County Circuit Court appeared. However, the fact that the transcript was in existence was established. We have no way of knowing whether or not Ross had access to a copy of the transcript. To accuse him of inadequate representation of his client because of his failure to request a continuance until the transcript had been filed would require an exercise in speculation and conjecture in which the trial court was not required to engage.

■ The failure to take steps to suppress appellant's statement, likewise, does not show inadequacy of Ross's representation. The attention which the issue of voluntariness of statements has received in recent years produces today an almost automatic reaction that any statement should be challenged. The current body of law had not been established in 1957. We have no way of knowing what Ross's idea about the statement was. It was not so obviously

lacking in voluntariness, on its face, as to demand action. The absence of a challenge does not evidence inadequate representation.

On the issue of voluntariness of his plea, appellant relies on his testimony that the sheriff told him that he selects the jury and that they do what he tells them to do; that appellant could either plead guilty or get worse; that the least he could get at a trial would be life. Appellant points to this as "undisputed evidence." True, it was not denied at the hearing, but the person in a position to deny it, the sheriff, was dead. Again, the trial court was not obliged to accept the credibility of appellant's testimony merely because it was not directly disputed.

The argument that the plea was not voluntary because induced by the involuntary admission contained in appellant's statement is negated by the conclusion that the involuntariness of the statement was not established.

Appellant further contends that the plea was not voluntary because it was shown to have been induced by the sheriff's representation that, if appellant would plead guilty, the sheriff would see that he would be paroled within five to seven years. Appellant's witnesses offered considerable testimony on this aspect of the case. His mother testified that she visited appellant in the jail on three occasions; that each time the sheriff told her that, if appellant would plead guilty, he would see that he got out on parole in five to seven years. It is not clear from Mrs. Roach's testimony that the sheriff, on her visits, made such an offer to appellant. She did testify that the sheriff "went as far to ask us to talk to Lindell to try to get him to do that [plead guilty and get out in five to seven years], but we wouldn't." Although Mrs. Roach did state that appellant was present when, on two subsequent visits, the sheriff made such an approach to her, the import of Mrs. Roach's testimony, as a whole, is that the sheriff sought, on this basis, to in-

duce her to get appellant to plead guilty, but she declined to do so.

Mrs. Neighbors, a sister of Mrs. Roach, testified that she was with her sister when they visited appellant a short time after his arrest. She recalled no conversation during that visit. Mrs. Neighbors returned with her sister a week later to visit appellant. At that time, according to Mrs. Neighbors, the sheriff said: "[T]he best thing for him to do was to plead guilty and he would be out within seven years, not longer than seven years." "He said he would do all he could to help him. He said he always liked Lindell and Lindell was a good boy and he would do all within his power to help in any way he could." Again it is not clear that the statement was made to appellant, for subsequently the witness stated: "The last visit, * * * [the sheriff] took us off to the side and explained to us that if Lindell would take the sentence that he would be out on parole or be free * * * within seven years." That witness also testified that she advised appellant not to plead guilty.

Appellant's stepfather testified that the sheriff "preached all the time for me to try to help him to plead guilty. I told him it wasn't my responsibility and I would have nothing to do with it. * * * [H]e just said I think he would plead guilty if you would recommend it. I said I would never do it, because I might make the wrong decision for him and I will not."

Appellant himself testified that the sheriff repeatedly urged him to plead guilty, telling him that he would be out in five to seven years and that he would help him to obtain parole. However, he did not attribute his guilty plea to the sheriff's representations. Rather, the appellant's version was that Ross convinced him to plead guilty.

"He told me, when he finally talked me into agreeing to plead guilty, he said I would only have to do five years, he would see that I got a parole in five years, that he

had a lot of influence here in this court and he knowed these people would try to help me get out and he told me when I went to court, he said, 'You don't have to say a word, just stand right there. If you will just stand right there by me, I will do all the talking.'"

Was the court obliged to accept this testimony, particularly in view of the other versions before it by appellant himself as to the inducing reason for his guilty plea? The court had before it appellant's oral testimony that Ross convinced him to plead guilty, the verified pro se motion stating that false promises on the part of the sheriff induced the plea and finally, an earlier version by way of a pro se verified motion, that the guilty plea had been induced by the prosecuting attorney's promise to nolle prosse other charges (upon payment of costs) if appellant would plead guilty to the first degree murder charge. The latter version was in a petition for writ of coram nobis, dated May 20, 1959.

Again it may be noted that the pro se motion filed March 17, 1967, made no reference to any improper inducement on the part of Ross for a plea of guilty. That claim apparently came to light after appellant learned of the death of Ross.

All of the circumstances cast great doubt upon the credibility of appellant's testimony. The trial court was not convinced by it. We cannot say that his conclusion was clearly erroneous.

Appellant has briefed at length the contention that the trial court failed to comply with Supreme Court Rule 25.04, V.A.M.R., by determining that appellant's plea was voluntarily made with understanding of the nature of the charge. We do not find that the issue was included in appellant's motion. Nor was it considered by the trial court. The motion set out above alleged invalidity of the sentence on various grounds, none of which asserted that the trial court failed to comply with Rule 25.04, supra.

At the conclusion of the hearing, the trial court enumerated the issues which it found presented and which it considered. He made no reference to compliance with Rule 25.04, supra, and his findings of fact and conclusions of law make no reference to the requirements of that rule.

There was testimony about the practice of Judge Eversole on a plea of guilty, but that was directed to the contention that defendant himself did not enter the plea, but the lawyer did it for him. The evidence was directed toward establishing the practice of Judge Eversole to accept the plea from the defendant, but did not purport to cover the entire procedure upon his acceptance of a plea of guilty.

■■■ The proceedings on the plea were not transcribed. Absent a record, the defendant seeking to show noncompliance with Supreme Court Rule 25.04, supra, must present evidence. Drew v. State, Mo.Sup., 436 S.W.2d 727, 729[1]; State v. Davis, Mo.Sup., 438 S.W.2d 232, 235[5–7]. If the state is to refute the evidence, the issue must be raised by the motion. Appellant's motion raised no such issue. The trial court considered no such issue. It is not, therefore, before us on this appeal.

■■■ We do not understand Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, to require consideration, on this review of a collateral proceeding, of the contention, although not raised below, that federally protected rights were violated in the acceptance of the plea. See Halliday v. United States, 394 U.S. 831, 89 S. Ct. 1498, 23 L.Ed.2d 16.

■■■ Appellant attacks the trial court's finding that appellant was not prejudiced by the failure of the magistrate before whom the preliminary hearing was held to deliver the transcript of the testimony of the witnesses to the circuit clerk. Supreme Court Rules 23.11 and 23.12, V.A.M.R. The testimony of the witnesses was transcribed. The reporter who recorded the testimony transcribed it June 21, 1957.

However, instead of delivering it to the magistrate to be filed in the circuit court with the remainder of the record of the magistrate court proceedings, the reporter mailed the transcript to the prosecuting attorney. Its whereabouts are unknown until October 31, 1968, when it was discovered in the files of the United States District Court in St. Louis, in a proceeding in which appellant had sought relief before that court in 1963.

The trial court's finding was premised on the theory that there had been no showing that the transcript had not, in fact, been filed in the circuit court, nor was there any showing that the transcript was, in fact, not available to Mr. Ross. The transcript was in existence and we cannot find these conclusions clearly erroneous. Nor would the conclusion that the failure of the magistrate to deliver the transcript to the circuit clerk had not been shown to result in prejudice be clearly erroneous. Prejudice would have arisen only if Ross had sought to make use of the transcript and it had not been available. There was no showing that any such thing occurred.

Appellant contends that the testimony of the coroner and the testimony of the sheriff, insofar as it relates to the facts of the offense, found in the transcript of the preliminary hearing, was improperly admitted in evidence, that the trial court erroneously relied upon such testimony in a recital of the facts of the crime, and that, therefore, the findings of the trial court on the details of the crime are not presumptively correct and should not be considered on the review of the case.

■ There are numerous answers to this objection but dispositive for purpose of this appeal is that none of the trial court's ultimate findings of fact and conclusions of law relate to the facts of the crime. The general recital of the trial court, preliminary to its findings of fact and conclusions of law, is in no manner related to the final judgment. If the statement is ignored, the basic findings and conclusions remain and appellant is not thereby benefited.

■ The contention that the affidavit in the magistrate court, charging appellant with the offense, was made by a person who had no knowledge of the facts alleged affords no basis for relief in this proceeding. Appellant's plea of guilty in the circuit court waived any defects in the proceedings in the magistrate court. State v. Richardson, Mo.Sup., 347 S.W.2d 165, 168–169[6–8]. In any event, the objection would not show a defect in the magistrate court proceedings. State v. Frazier, 339 Mo. 966, 98 S.W.2d 707, 712[3].

Appellant's final point, on this appeal, that appellant was denied a fair trial, in violation of his rights under the Fourteenth Amendment to the Constitution of the United States, and under Section 10, Article I, Constitution of Missouri, 1945, is based upon the alleged denial of rights, heretofore considered. Since we have concluded that the trial court's findings that there was no denial on the grounds here urged were not clearly erroneous, the final point must fail.

Judgment affirmed.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

FINCH, Acting C. J., DONNELLY, MORGAN, HOLMAN, and BARDGETT, JJ., and WOLFE, Special Judge, concur; SEILER, J., dissents in separate dissenting opinion filed; HENLEY, C. J., not sitting.

SEILER, Presiding Judge (dissenting).

Although I agree with the opinion of WELBORN, C., that since there was evidence to support the finding that defendant's statement was voluntary, " * * * the question of the relevancy of an involuntary statement to the voluntariness of a plea of guilty * * * " drops out of the case, I must respectfully dissent on the proposition that we should not pass on the conten-

tion that the trial court failed to comply with Rule 25.04.

Although this issue was not included in defendant's 27.26 motion, the following evidence came in without objection and the hearing was thereby expanded accordingly. In the state's cross-examination of the court reporter, the reporter said it was customary for the judge to ask defendant certain questions prior to accepting a plea of guilty, but although he had been the reporter 19 years he was unable to recall more than that the usual question was "if he had discussed this matter with his attorney and asked what his plea was." The state called the circuit clerk as its witness and asked if she recalled whether the judge followed a custom in sentencing. She said he did, but she could remember nothing about this case and nothing was developed from her as to what the judge's custom was except she could not recall any case where he did not ask the accused on a guilty plea whether that was his plea. The record is insufficient, in my opinion, to show the plea of guilty was accepted only after the court first determined it was made voluntarily with understanding of the nature of the charge. This defect is not cured by the failure of the trial court in the 27.26 hearing to pass on it.

Entirely aside from the standards set forth in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, our Rule 25.04 has been in force ever since January 1, 1953, so it applied when the guilty plea was entered in this case on September 23, 1957. That rule requires the court " * * * shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge * * * " It is up to the court or the state to see this is done, not up to the defendant. In the present case, there is an absence of any showing of compliance with this mandatory rule. The fact the trial court did not believe defendant's testimony at the 27.26 hearing does not establish the existence of a contrary set of facts. In my opinion, the judgment

should be reversed and the cause remanded for further hearing as to whether Rule 25.-04 was complied with at the time the guilty plea was entered. I do not understand Drew v. State (Mo.Sup.) 436 S.W.2d 727, and State v. Davis (Mo.Sup.) 438 S.W.2d 232, cited by Judge WELBORN, to hold otherwise. In the first, the transcript of the proceedings at the time of the guilty plea was available and considered by the court. It supplied " * * * ample evidentiary basis for a finding that the plea of guilty was 'made voluntarily with understanding of the nature of the charge' * * * ", 436 S.W.2d l.c. 733. In the second, there was testimony at the 27.26 hearing that the circuit judge at the time of the guilty plea explained the charges to the defendant and that defendant understood the charges against him, 438 S.W.2d l.c. 236–237.

In my opinion, Rule 25.04 is sound and should be scrupulously observed. While not suggesting that such has occurred, it is evident that the requirements of Rule 25.04 could be disregarded with impunity and grave abuses could occur in practice under the majority opinion, so long as the trial court disbelieves defendant's testimony at the 27.26 hearing in a case where the record is silent or insufficient as to compliance with the rule at the time of the guilty plea.