Jack Virgil CAFFEY, Appellant,

v.

STATE of Missouri, Respondent.

No. 56699.

Supreme Court of Missouri,
Division No. 1.

July 17, 1972.

Jack Virgil Caffey, appellant, pro se and C. M. Hulen, Jr., Moberly, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Commissioner.

Appeal from denial, after evidentiary hearing, of motion under Rule 27.26, V.A.M.R., to vacate and set aside judgment of conviction of stealing property of a value of at least fifty dollars. §§ 560.156, 560.-161, V.A.M.S.

On October 10, 1967, Jack Virgil Caffey was convicted of stealing property of a value of at least fifty dollars ($175 in currency), Sections 560.156 and 560.161, supra, and complaints at trial were limited to the question of jurisdiction of the circuit court to try the case based on assertions of denial of a speedy trial. The judgment of conviction was affirmed, and a credit against the sentence was ordered for time spent in the Randolph County jail awaiting preliminary hearing. State v. Caffey, Mo., 438 S.W.2d 167.

Subsequently, Jack Virgil Caffey filed a petition for writ of habeas corpus in the United States District Court for the Western District of Missouri. As grounds for relief, petitioner asserted:

"(a) * * * denied his Sixth Amendment right to a speedy trial.

"(b) * * * denied his Sixth Amendment right to the effective assistance of counsel." That court noted that petitioner had neither raised nor briefed his contention (b), and dismissed the petition for failure to exhaust state remedies, observing further that petitioner "should therefore file a motion to vacate his sentence under Missouri Criminal Rule 27.26 in the state trial court in which he raises all the grounds and presents all evidence known to him for his contention that his state conviction was secured in violation of his fed-

erally protected rights." Caffey v. Swenson, D.C.W.D.Mo., 310 F.Supp. 16, 20.

On February 18, 1970, Jack Virgil Caffey filed his motion under Rule 27.26, alleging as grounds for relief: "(a) * * * denied his Sixth Amendment right to a speedy trial * * *. (b) * * * denied his Sixth Amendment right to the assistance of counsel * * *. (c) * * * denied state procedural due process * * *."

On February 19, 1970, the trial court denied the motion without a hearing. An appeal (No. 55,505) was taken and, on December 14, 1970, after its submission, this court set aside the submission and remanded the cause for evidentiary hearing on any claims for relief known to movant, noting, in particular, the appearance of an issue of fact whether movant was denied effective assistance of counsel.

The evidentiary hearing was accorded February 16, 1971, at which time movant was represented by Mr. C. M. Hulen, Jr., who, following conference with movant, announced the hearing would proceed on the original motion without amendment.

Jack Virgil Caffey gave his version of events prior to trial. On July 18, 1966, he was taken before the Magistrate Court of Randolph County from the Missouri state penitentiary to answer a complaint of felonious stealing (over $175 in currency). He requested immediate preliminary hearing and appointment of counsel—inasmuch as he was otherwise in prison on other convictions. The court set the matter for the 25th of July and remanded him to custody of the sheriff and "counsel would be in touch with me." By way of next contact with court or counsel, "there were two times that I did speak to a lawyer in the county jail and attempted to get some kind of an agreement with them." One of them, Mr. Henderson, subsequently was appointed as counsel for him. " * * * then a Mr. Blaeuer * * * I wrote a letter and had him come over * * * and I told him what my position was and

he said he would look into it, and he advised me by letter what his thoughts were on the subject." He was unable to make the necessary financial arrangement with Mr. Blaeuer. He thought this was after the latter part of 1966.

His next contact with court or counsel was "probably May the 5th (1967)," following a letter in the nature of a petition for writ of habeas corpus which he wrote to the magistrate May 3, 1967.

He was taken before the magistrate court on the 16th of May. The magistrate advised him "that he had appointed a Mr. Walden, that he was going to continue the case again and that Mr. Walden would be in touch" with him. Movant, over his objection, was again remanded to the custody of the sheriff. On May 23, 1967, he was again taken before the magistrate court and was advised there was some reason Mr. Walden was not there and the case was continued. He again requested immediate preliminary hearing and, upon leaving court, saw Mr. Walden and they conferred briefly. This was Mr. Walden's first knowledge of his appointment. He told Mr. Walden of a pending application in the Missouri Supreme Court for writ of habeas corpus and Mr. Walden was to "look into it for me and consult with me later." On May 30, 1967, he had not yet heard from Mr. Walden. "I figured this was leading to another continuance, and so I told him I couldn't have another continuance and I asked him to withdraw." Mr. Walden honored the request.

On June 7, 1967, Mr. Arthur O'Keefe was appointed as counsel. Within two or three days, and after conference with Mr. O'Keefe, he withdrew as counsel. "I may have fired him later, but I was intending to have my contentions presented. * * * the denial of a speedy trial and assistance of counsel * * *. He was for the position that I would get bound over real quick * * *."

On June 13, 1967, Mr. Richard Chamier was appointed as counsel for movant. They conferred concerning movant's contentions and appeared in magistrate court June 14, 1967. Mr. Chamier presented movant's motions going to denial of speedy trial and counsel. A disagreement arose regarding the method of presentation which resulted in Mr. Chamier's withdrawal. " * * * he just didn't argue the motions. He just made the bare allegations that the preliminary had been delayed for more than ten days at one time. * * * he should have made, I thought, a more forceful argument * * * then I represented myself at the preliminary hearing and there was a separate hearing for the misdemeanor charge." He cross-examined witnesses and argued his motions. At this appearance, he was found guilty of the misdemeanor,[1] was bound over on the felony, and was remanded to custody of the sheriff.

On June 15, 1967, he was arraigned in circuit court on the felony charge, and Mr. Marion E. Lamb was appointed counsel. He had opportunity to confer with Mr. Lamb. "I told Mr. Lamb I could not go to trial on the merits of the case and all I was interested in was presenting my motions to dismiss." At trial October 10, 1967, he presented evidence on his motion to bar prosecution for failure to accord speedy trial. He stated witnesses were not available; and he now names them as his father, who died in October, 1966, and a man called "Spanky." He says now that his father would have testified that movant was in possession of the two bags of coins, subject of the prosecution, before the alleged stealing occurred, and that "Spanky," a professional gambler holding a Kansas liquor license, who he last saw in April, 1966, would have testified that subject coins were given him by "Spanky" in March, 1966, prior to the date of the alleged offense.[2]

1. See State v. Caffey, Mo., 445 S.W.2d 642, affirming conviction on the misdemeanor charge.

2. On original appeal, it was noted that defendant was unwilling to name witnesses or suggest what testimony they

Movant also complained of loss of "blood time" and library services during his jail stay which would have been available in the penitentiary.

Mr. O'Keefe and Mr. Chamier were called in response to the motion.

Mr. O'Keefe, upon learning of his appointment, conferred with movant. " * * * we sat down and started to talk about it, and he at the time said that he wanted me to guarantee or to assure him that I would ask certain questions at the time of the trial, and that as I remember Mr. Walden had not, or he had been represented by someone before that he said had not asked questions that he thought pertinent and that he had required them and the lawyer refused to ask the questions that he wanted asked. I told him that I could not do that, all I could do was to assure him that I would ask such questions that I thought proper, that I had been practicing law for so many years, and for his best interest and welfare and his protection that I would ask certain questions that I thought proper and if I thought the ones he wanted to ask were proper I would, but I would not guarantee that I ask all questions that he requested me to do so. Then if I remember he became rather indignant, I don't know what happened, but the sum total was that in my view there was an absolute conflict of theories on how to try a lawsuit and if he is going to demand certain things such as that that I couldn't stay in the lawsuit because I couldn't make these promises that I would ask any question he demanded of me, and I came back in and requested the court to be relieved for that reason. * * * I remember we were going along famously, and the nature of the case I thought probably he might have a chance, I don't know, I remember

that far. It was a very pleasant relationship. I advised him on various matters, and then we got to this case, asking these questions, and I remember I asked him what kind of questions, and he was very vague, and then he gave me some examples, and some were probably proper questions, and some others, those questions shouldn't be asked at all, and he said you'll have to ask those questions, and I said I don't have to do anything, and then the relationship deteriorated from there on down. * * * I would say that the first 15 or 20 minutes was taken up by giving him a review of the case. Also he said * * * something about the preliminary hearing, but I don't remember exactly all the details."

Mr. Chamier "started out pretty much with a disagreement and proceeded from a disagreement to a point where we, I think, pretty well understood each other, and where we have, at least I have, some warm feeling for him. But at the preliminary, if I remember the facts correctly, I found that Mr. Caffey was a man who had an idea as to how his case ought to be handled and we didn't agree on how it ought to be done, and I am sure that at about that point I might have had a belly full and I wasn't going to go any further. I wasn't used to having clients telling me how to handle the lawsuit, and I didn't know at that time how, and I am serious when I say this, I didn't know at that time how well versed Mr. Caffey was, I didn't know how mature his judgment was, and I was disinclined to walk down the road to justice with Mr. Caffey because he wouldn't listen to me * * *." With respect to presentation of certain of his motions, "I did not agree to do the method of presentation that he had in mind and this

might give. His testimony with respect to existence of a defense and availability of witnesses to substantiate was characterized as "vague, indefinite and unconvincing" ; and the opinion observed, "Evidently the trial court did not believe this testimony and on this review we find

that Caffey failed to sustain the burden of proving that as a result of the delay he was hindered or prejudiced in the presentation at the trial of a valid defense." State v. Caffey, supra, 438 S.W. 2d l. c. 172–173 [7].

is what resulted in our mutual agreement to disagree."

In denial of relief, the trial court made these pertinent findings and conclusions:

"* * * that movant's constitutional right to a speedy trial was not violated. State v. Caffey 438 S.W.2d 167. Petition for Writ of Certiorari to Supreme Court of Missouri [U.S.] denied on October 13, 1969, 396 U.S. 853, 24 L.Ed.2d 102, 90 S. Ct. 114. * * * that movant's testimony as to his father and one 'Spanky' as witnesses testifying in his defense is not true and finds that movant failed to sustain the burden of proving that as a result of the delay in holding a preliminary hearing and not effectively appointing counsel for him that he was hindered or prejudiced in the presentation of a valid defense at his trial. * * * Movant contends that none of his court appointed counsel advised him that he had the burden of proving that he had been denied a speedy trial and so testified at the hearing on this motion. The court rejects this contention and finds that he did receive effective assistance of counsel. The trial transcript reveals that·prior to his trial in Circuit Court a Motion in Bar of Prosecution was filed. This motion was based primarily on the claim defendant had been denied due process and his right to a speedy trial under the U.S. Constitution. That defendant and two other witnesses were placed on the stand and testified to support the motion. This evidence was presented by defendant's attorney. The court specifically finds that there is no credible evidence to show that movant's trial attorney did not advise him that he should assume the burden of proof and present evidence in support of his pretrial motion. The court further finds that there has been no evidence presented by movant that he had ineffective assistance of counsel at his trial or in the preparation for said trial or at any critical stage of the proceedings against him in the case."

Appellant's first contention, as briefed by counsel, is that defendant was denied his right to a speedy trial as guaranteed by Amendment VI, United States Constitution. The supporting argument asserts that the right to speedy trial arose July 18, 1966, "if not sooner"; that the state delayed prosecution unreasonably, either negligently or deliberately, and that the delay prejudiced his rights through loss of witnesses.

█ This issue was presented by defendant in his motion to bar prosecution upon which hearing was held before trial October 10, 1967, Caffey v. Swenson, supra; and defendant testified to the same time lapse, other incidents of the proceedings, and inability, due to the delay, to obtain witnesses for trial. The only difference from that evidence and that adduced in this evidentiary hearing is that movant is now willing to name such witnesses and suggest what testimony they might have been expected to give. The court overruled the pretrial motion to bar prosecution; the trial resulted in conviction; and, upon appeal, the denial of the motion and conviction were affirmed. State v. Caffey, supra, 438 S.W.2d 167, cert. den. 396 U.S. 853, 90 S.Ct. 114, 24 L.Ed.2d 102. The attempt on this evidentiary hearing to bolster the vague allusions to prejudice as a result of absent witnesses by now naming them was not believed by the trial court. Shoemake v. State, Mo., 462 S.W.2d 772, 775 [4]. The prior decision is controlling, and Rule 27.26 does not permit a second appeal on an issue presented on original appeal. Crawford v. State, Mo., 436 S.W.2d 632.

Appellant also briefs this point, *pro se,* recognizing, as he must, the impact against him of his prior appeal on this issue. In order to avoid the difficulty thus imposed, he submits the court should overrule State v. Caffey, supra, 438 S.W.2d 167. The invitation is declined.

█ Appellant's second point, as presented by counsel, is that defendant was denied his right to have assistance of counsel. The supporting argument asserts that he was denied assistance of counsel through the failure of the magistrate to

**454**

communicate to Mr. Walden his appointment as counsel for defendant, and the short times that other lawyers conferred with him. Appellant also briefs this contention *pro se*. It is recognized that defendant did have counsel at preliminary hearing, Mr. Chamier, and at trial, Mr. Lamb. There is no evidence that either of these lawyers, or any of the others appointed at various times to represent defendant, did not render effective assistance in what they were permitted to do. Each of them was burdened and hindered by the limits and demands imposed by defendant himself. With the evidence on this issue in such posture, it may not be said that the trial court's denial of relief on this ground was "clearly erroneous." Rule 27.26, supra; Crosswhite v. State, Mo., 426 S.W.2d 67. See also the prior ruling on this issue in State v. Caffey, supra, 438 S.W.2d 1. c. 173 [8], with respect to "delay in the 'effective assignment of counsel.'" Caffey v. Swenson, supra.

Appellant, by *pro se* brief and *pro se* supplement, contends also that this court should revise its judgment on the original appeal by which defendant was given "credit on his penitentiary sentence and judgment in our Case No. 51596 for the time spent in confinement in the Randolph County jail awaiting the preliminary hearing * * *." State v. Caffey, supra, 438 S.W.2d 1. c. 174 [13]. Appellant's presentation of this request appears by his brief to involve an "order of the Circuit Court of Cole County, entered December 13, 1971," in a petition for "Declaratory Judgment" filed February 4, 1970, and a "Motion for Court Order Allowing Credit on Sentence for Pre-trial Confinement" filed December 15, 1971, in the Circuit Court of Randolph County, alleged to have been overruled February 10, 1972. Neither of these orders appears in the transcript, nor is there any transcript of any such proceedings upon which to review this assertion. Accordingly, it is not presented for consideration on this appeal.

Judgment affirmed.

WELBORN, C., not sitting.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

BARDGETT, Acting P. J., SEILER, J. and JENSEN, Special Judge, concur.

HOLMAN, P. J., not sitting.