Emery L. NEWTON, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 14976.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 29, 1987.

Motion for Rehearing or Transfer Denied Oct. 19, 1987.

---

A.C. Reed, Springfield, for movant-appellant.

William L. Webster, Atty. Gen., Donna Richards–Crosswhite, Asst. Atty. Gen., Jefferson City, for respondent-respondent.

HOGAN, Judge.

This is a proceeding for postconviction relief pursuant to Rule 27.26. After a hearing, the circuit court denied relief. The movant [hereinafter defendant] has appealed. We affirm.

By indictment presented to the Circuit Court of Greene County November 1, 1984, defendant was charged with: 1) kidnapping, in violation of § 565.110, RSMo 1978; 2) forcible rape, in violation of § 566.030, RSMo Supp.1984, and 3) two counts of sodomy in violation of § 566.060, RSMo Supp. 1984. A young female nursing student, abducted in north Springfield, was the victim of all the offenses charged.

Defendant was arraigned on November 2, 1984. He appeared with counsel and entered a plea of not guilty to each count of the indictment. On November 9, 1984, defendant filed a request for a psychiatric examination pursuant to § 552.020, RSMo Supp.1984. He also gave notice of his intention to rely on mental disease or defect excluding responsibility as required by § 552.030.2, RSMo Supp.1984.

On November 30, the State was given leave to substitute an information for the indictment as provided by Rule 23.08. The information filed charged the same offenses as the indictment, and further charged defendant with being both a prior and a persistent offender within the meaning of § 558.016.2 and § 558.016.3, RSMo Supp.1984. The court also granted the defendant's motion for a psychiatric examination and designated a clinical psychologist to make the examination required by § 552.020.2. A report was filed December 20, 1984. The examiner concluded: (1) that the defendant did not suffer from a mental disease or defect which prohibited him from understanding the proceedings against him or from consulting with his attorney and developing a defense, and (2) that the defendant was neither suffering from a mental disease or defect which: (a) prevented his knowing or appreciating the nature, quality or wrongfulness of his acts at the time the offenses charged were committed, nor (b) rendered him incapable of

conforming his conduct to the requirements of the law.

The public defender, who represented the defendant at this stage of the proceeding, objected to this report and requested an examination of the accused by an examiner of the public defender's choosing and at the public defender's expense. This request was granted. The defendant was thereafter examined by a practicing psychiatrist who also examined the police reports and the psychologist's history and evaluation of the defendant's mental status. The psychiatrist's report (Respondent's Exhibit A) concludes:

> "I think this individual is competent to stand trial and I see no compelling evidence that he had a mental disease or defect at the time of the alleged offense which prevented him from understanding the nature of his offence [sic] or which kept him from conforming his actions to the requirement [sic] of the law."

At the defendant's request, the case was continued several times. The defendant finally struck a plea bargain with the State. The terms of this plea agreement germane to this appeal were that in exchange for the entry of a plea of guilty, defendant would: (1) receive a sentence of ten (10) years on Count One (kidnapping); (2) receive a sentence of twenty (20) years on Count Two (forcible rape); (3) the sentences would run consecutively; (4) Counts Three and Four (charging sodomy) would be dismissed, and (5) probation would be denied. On April 24, 1985, the defendant appeared before the trial court with counsel. The docket entry reflects that the defendant asked leave to withdraw his plea of not guilty and enter a plea of guilty to Counts One and Two of the information.

The trial court then addressed the defendant personally and in open court, as required by Rule 24.02. Parts of the plea hearing must be set out.

> "THE COURT: How old are you?
>
> MR. NEWTON: Thirty-two.
>
> THE COURT: And how far did you go in school?
>
> MR. NEWTON: Eighth or ninth grade.

> THE COURT: Have you had any schooling since high school?
>
> MR. NEWTON: No.
>
> \* \* \* \* \* \*
>
> THE COURT: At the time of the alleged offenses were you under the influence of drugs or alcohol?
>
> MR. NEWTON: I was drinking.
>
> THE COURT: Could you speak up a little louder?
>
> MR. NEWTON: Yes, I was drinking.
>
> THE COURT: All right. And was that—did anyone make you drink?
>
> MR. NEWTON: No, sir.
>
> THE COURT: Do you remember the events?
>
> MR. NEWTON: Yes.
>
> \* \* \* \* \* \*
>
> MR. DEATON [THE PUBLIC DEFENDER]: Your Honor, may I briefly interrupt and make a record on this. I've requested two psychiatric examinations in this case. One was—the second one was at the cost of the Public Defender's Office, in which I asked the Court to appoint [a psychiatrist] to examine the defendant at our costs. *I have used his assistance as an expert in this case and discussed with him the possibility of filing and proceeding on a defense of intoxication, even though the law does not acknowledge this defense in Missouri.* I have researched two Supreme Court cases in Indiana that held that under the Indiana Constitution an instruction like the one in Missouri that precludes intoxication as a defense was unconstitutional in Indiana. *I've discussed this and the facts of the incident and the possibility of the intoxication defense with [the psychiatrist] and with my client and I believe that there is not any evidence to raise that as a defense,* even if I could overcome the tremendous hurdle of the instruction that prohibits that defense." (Emphasis added.)

The trial court inquired if the defendant had ever been treated for mental illness. The defendant indicated he had not. The court's interrogation then continued:

"THE COURT: *All right. Now, have you had sufficient time to talk with your attorney before proceeding toward a plea of guilty?*

MR. NEWTON: *Yes, sir.*

THE COURT: *Are you satisfied with your attorney's services in this case?*

MR. NEWTON: *Yes, sir.*

THE COURT: *Has your attorney failed to do anything that you wanted him to do in representing you?*

MR. NEWTON: *No, sir.*

THE COURT: *Has he done anything that you wish he had not done in representing you?*

MR. NEWTON: *No, sir.*" (Our emphasis.)

\*    \*    \*    \*    \*    \*

The information was read to the defendant. The range of possible punishments was discussed. Defendant was again asked if he was prepared to plead guilty to Counts One and Two. He answered affirmatively. He stated to the trial court that he was pleading guilty because he believed he was guilty. The trial court then inquired:

"THE COURT: What did you do that causes you to believe that you're guilty?

MR. NEWTON: *I took that girl and took her out of town and forced her.*

THE COURT: *Then it was against her will?*

MR. NEWTON: *Yes, sir.*

THE COURT: All right. Did she travel with you out of town against her will?

MR. NEWTON: Yes, sir.

THE COURT: *Did you also force her to have sexual intercourse against her will?*

MR. NEWTON: *Yes, sir.*"

The plea bargain agreement was received and shown to the defendant. The defendant stated he had signed it. He indicated he understood it. Counsel for the defendant stated to the trial court that he had recommended waiving a presentence investigation and requested the court to proceed with sentencing. The court again addressed the defendant:

"THE COURT: All right, thank you. Mr. Newton, I want to discuss the plea of not guilty that you entered by reason of lack of mental capacity. You have been examined by, I think, was it two psychiatrists?

MR. NEWTON: Yes, sir.

THE COURT: Is that right? And have you seen their reports?

MR. NEWTON: Yes, sir.

THE COURT: Do you have any question concerning the conclusions that they reached in their reports?

MR. NEWTON: No, sir.

THE COURT: *Now, do you understand that if the Court accepts your pleas of guilty, that then you will have waived all of the rights that you may have to contend in this case that you lack mental capacity?*

MR. NEWTON: (Nodded head affirmatively.)

THE COURT: *Do you understand that even though you did these acts, you do have the right to rely upon the defense of lack of mental capacity, do you understand that?*

MR. NEWTON: *Yes, sir.*

THE COURT: *And so that you could have a trial in which you admit that you did these acts, but you contend that you lacked the mental capacity to be responsible for them, do you understand that?*

MR. NEWTON: *Yes, sir.*

THE COURT: *Have those rights been explained to you before by your attorney?*

MR. NEWTON: *Yes, sir.*

THE COURT: *Do you understand that if I accept your plea of guilty you will have waived the right to make the contention that we just discussed?*

MR. NEWTON: *Yes, sir.*

THE COURT: Do you still want the Court to accept your plea of guilty?

MR. NEWTON: Yes, sir."

The trial court then inquired to determine that there was a factual basis for the plea, as required by Rule 24.02(e). The prosecutor advised the court that the victim

was a student at a School of Nursing in north Springfield. She had just arrived at the school, with her luggage, when the defendant, a trash hauler, forced her into the garbage truck he was operating. The defendant then drove his victim to a place in rural Greene County. He then forced his victim to have sexual intercourse and performed a number of deviate sexual acts upon her person. Some measure of the quality of the attack is suggested by defense counsel's statement that there was evidence the defendant "put part of his foot, at least his toes, in [the victim's] vagina" while she was pinned against the door of the truck.

The trial court then explained the defendant's right to a trial. It then further addressed the defendant:

"THE COURT: Now, do you still want the Court to accept your plea of guilty?

MR. NEWTON: Yes, sir.

THE COURT: Does your willingness to plead guilty result from any discussions between your attorney and the prosecuting attorney or yourself and the prosecuting attorney that we have not already discussed here today?

MR. NEWTON: No, sir.

THE COURT: Does it result from any force or threat to yourself or to your loved ones?

MR. NEWTON: No, sir.

\*　\*　\*　\*　\*　\*

THE COURT: Does it result from any promises of any kind that we have not already discussed here today?

MR. NEWTON: No, sir.

THE COURT: Is it purely voluntary on your part?

MR. NEWTON: Yes, sir."

The trial court thereupon found that defendant had entered his pleas freely, voluntarily and intelligently. It accepted the two pleas of guilty, and found there was a factual basis for the pleas. It unequivocally accepted the plea bargain. The defendant waived a presentence investigation.

In this court the defendant has made two assignments of error. He first maintains that he was denied the effective assistance

of counsel before he entered his plea because: (1) his trial counsel only visited him about three or four times while he was in jail; (2) his trial counsel told him that his wife would not assist him in the case; (3) trial counsel did not tell him the elements of the crime of forcible rape; (4) trial counsel did not contact "his" [defendant's] witnesses, and (5) trial counsel left documents with the appellant which the appellant was unable to read.

When these assertions are examined in light of the hearing on the motion, it becomes evident that the defendant seeks to recant and withdraw his pleas of guilty, even though he admitted his guilt and inferentially a lack of defense to the charges of kidnapping and rape at the time he entered those pleas. He claims he did not understand the charges to which he pled guilty, even though the information was read to him at the plea hearing and he positively stated he "took that girl and took her out of town and forced her [to go, against her will]" and just as positively stated he forced her to have sexual intercourse against her will.

■ The merit of this point is governed by the rule that in a proceeding for post-conviction relief, the credibility of the witnesses is a matter for the trial judge. He is at liberty to believe all or none of the testimony of any witness, or to accept it in part and reject it in part. *Shoemake v. State*, 462 S.W.2d 772, 775[1–4] (Mo.banc 1971); *Jones v. State*, 598 S.W.2d 595, 597[7] (Mo.App.1980); *Whites v. State*, 587 S.W.2d 651, 653[6] (Mo.App.1979). The evidence presented at the plea hearing—which in this case was received under oath—was sufficient to demonstrate that the defendant understood his rights and was ample to negate the existence of a credible defense. The trial court was at liberty to accept the testimony at the plea hearing or the evidence adduced at the hearing on the motion. The point is without merit.

The defendant's further assignment of error is that the motion court erred in denying relief because the defendant's plea of guilty should not have been accepted without: (1) requiring that defendant's plea

of not guilty by reason of mental disease or defect be withdrawn or (2) alternatively, making a finding that the defendant had the capacity to enter a plea of guilty.

As we have seen, the defendant was first examined by a clinical psychologist who found defendant competent to stand trial and further found no mental disease or defect of the order defined in § 552.030.1, RSMo Supp.1984. The defendant objected to this evaluation and requested appointment of another examiner. A second examination was ordered. Upon the second examination, it was again found that the defendant was competent to stand trial and the examining psychiatrist "[saw] no compelling evidence that [defendant] had a mental disease or defect at the time of the alleged offense which prevented him from understanding the nature of his offence [sic] or which kept him from conforming his actions to the requirement [sic] of the law."

■ Section 552.020.7, RSMo Supp. 1984, provided that if a mental examination was contested, the court would hold a hearing relative to the accused's fitness to proceed. Although the merits of the second assignment of error might be differently approached, we believe the statute—§ 552.020.7—was intended primarily to restate a constitutional principle. When sufficient evidence is presented in the trial court to raise a serious doubt as to a defendant's mental competency to stand trial, the court should conduct a hearing on that issue before proceeding with the trial. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Nevertheless in a proceeding under Rule 27.26, the burden of showing that facts exist sufficient to raise a bona fide doubt as to the movant's competency to stand trial rests on the movant. *Sloan v. Estelle*, 710 F.2d 229, 232[8, 9] (5th Cir.1983), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 724, 79 L.Ed.2d 185 (1984). There is no evidence in the record indicating that the defendant was incompetent to enter a plea of guilty and if the trial court should have had some sort of hearing, the defendant was not prejudiced because it did not do so.

However that may be, the record clearly shows that the defendant *did* withdraw his plea of not guilty by reason of mental disease or defect, and that the effect of withdrawing that plea was carefully explained to him by the trial court. Defendant further stated he had never been treated for any mental illness. The second assignment of error has no merit.

What we have said and held closely parallels the motion court's findings. We find no clear error within the meaning of Rule 27.26(j). The judgment is affirmed.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.